**KROPP FORGE COMPANY, an Illinois Corporation, Plaintiff-Appellee**

**v.**

**GLOBE INDEMNITY COMPANY, a New York Corporation, Defendant-Appellant.**

**No. 12782.**

United States Court of Appeals
Seventh Circuit.
March 10, 1960.
Rehearing Denied April 7, 1960.

Robert B. Johnstone, Leslie H. Vogel, Robert C. Vogel, Chicago, Ill., for appellant.

Louis Linton Dent, Leo T. Norville, Richard J. Walsh, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, SCHNACKENBERG, Circuit Judge, and GRUBB, District Judge.

HASTINGS, Chief Judge.

This is a diversity action brought by Kropp Forge Company, plaintiff-appellee, against Globe Indemnity Company, defendant-appellant, seeking a judgment for the cost of repairs and damages due to partial interruption of business in its aviation forge plant in Cicero, Illinois. The complaint is founded on a boiler insurance policy issued by defendant to plaintiff. It is alleged that the accident or occurrence for which recovery is sought was within the terms of the policy in question. Defendant's answer denies that the accident was covered by its policy of insurance.

The case was tried to a jury resulting in a verdict in favor of plaintiff against defendant in the sum of $28,947.46. At the close of plaintiff's case the trial court denied defendant's motion for a directed verdict. Defendant rested its case without introducing any evidence. After the verdict and rendition of judgment thereon, the trial court denied defendant's motion to set aside the verdict and for judgment in its favor notwithstanding the

verdict. No motion for a new trial was made. This appeal followed.

Defendant asserts error in the denial of its motions for a favorable verdict. The sole contested issue before us in this appeal is whether there was sufficient evidence to take the case to the jury to determine whether the occurrence was an accident within the meaning of defendant's insurance policy.

The accident occurred on Monday, April 30, 1956, to plaintiff's 14-inch high pressure steam line. The ten large forging hammers of varying sizes in plaintiff's aviation plant were served by steam conveyed into the plant by this line from the power house through a steam tunnel. The tunnel was about seven feet high and seven feet wide and extended generally north from the power house. The steam line in the tunnel was about 154 feet long. The line ran straight north for about 91 feet, then turned to the west at an angle of about 15 degrees for about 53 feet and turned back to the north about 10 feet.

The line itself was a 14-inch steel pipe with walls ⅜ths of an inch thick. It was covered with two and one-half inches of insulation. The pipe was welded together (rather than screwed) into one continuous line with an expansion sleeve located in the south end. There were six or eight upright plates, each one-half inch thick, welded to the line at various points which were in turn welded to similar steel plates about 12 inches square. These plates rested on steel pedestals bolted to the concrete floor of the tunnel with expansion bolts. On top of the pedestals was a brass plate about fourteen inches square with guides on two sides. The plates welded to the line rested on the brass plates on the pedestals, and the two plates were lubricated. The guides permitted the line to move longitudinally.

On the preceding Friday, about midnight, the line had been shut down and permitted to cool in order to allow a changeover from oil to gas fuel in the boilers, and the plant was completely shut down on that weekend. On the following Monday, April 30, 1956, the power house engineer started to warm up the steam line about one o'clock A. M.; and plant operations were scheduled to start at seven o'clock that morning. The warming up process had to be done gradually, usually requiring five or six hours before steam at the operating temperature of approximately 350 degrees Fahrenheit could be introduced into the line. This process was completed, and the hammers had been in operation for about two hours when trouble developed and the line had to be immediately shut down.

Anderson, one of plaintiff's plant engineers, whose duties were to make sure that the combustion in the boilers and the conditions in the steam line were right, had inspected the boilers and then went through the tunnel to check the steam traps about 8:30 o'clock that morning. When he passed through the tunnel, he noticed a disturbance on the way down. He remained at the other end about fifteen minutes; and as he started back through to the boiler room, he discovered that the line had bulged out about four or five inches, shearing off two of the steel plates welded to the line on which it rested. Several of the steel pedestals had ripped loose from the concrete floor, and the steel guides on some of the pedestals had been torn off. The expansion joint or sleeve had not received the line and was pulled out in a cocked position almost to its limit. Anderson immediately reported this condition to the chief engineer, Jacobson; Jacobson and his assistant, Kuczek, went into the tunnel and confirmed what Anderson had discovered. Fearing considerable property damage and possible serious personal injuries, Jacobson ordered the line shut down and production halted. Subsequently, the insulation was removed from the line, and it was found that the pipe had become bulged and egg-shaped in places and had moved as much as five and one-half inches.

Defendant's policy insured against loss due to accidents as therein specified. The policy schedules define accidents to objects which, among other things, in-

clude "the complete boiler or apparatus including * * * any piping including valves and pipe fittings thereon." It is admitted that the steam line was an "object" insured under the policy and that the occurrence in question was within the policy definition of a "sudden and accidental tearing asunder" of the insured object.

The single question in dispute is whether the accident was *"caused by pressure of steam"* as defined in the following pertinent parts of the applicable policy schedule:

> "1. A sudden and accidental tearing asunder of the Object, or any part thereof, *caused by pressure of steam therein,* but cracking shall not constitute a sudden and accidental tearing asunder;
>
> * * * * * *
>
> "4. A sudden and accidental bulging of the Object, or any part thereof, which is *caused by pressure of steam or water within* the Object or which results from a deficiency of steam or water therein and which immediately prevents or makes unsafe the continued use of the Object." (Emphasis added.)

■■ It is well settled that in reviewing the trial court's refusal to grant a judgment notwithstanding the verdict, the standards required by that motion are the same as those raised by a motion for a directed verdict. Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147. We must determine whether the evidence justifies submission of the case to the jury. Lambie v. Tibbits, 7 Cir., 1959, 267 F.2d 902, 903. It is proper for the trial court to deny such a motion "where the evidence, along with all inferences to be reasonably drawn therefrom, where viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." Smith v. J. C. Penney Co., 7 Cir., 1958, 261 F.2d 218, 219.

■ Defendant argues that all of plaintiff's evidence (defendant offered no evidence) shows merely that the bowing, bulging and movement of the steam line was caused by expansion due to *heat,* not to pressure, and that damage caused by heat is not within the operative language of the policy. We do not agree. It is true, of course, that heat will cause steel to expand. The evidence clearly demonstrates that the heat applied to water in the boiler creates steam; that as the temperature increases, the steam pressure builds up and the steam moves into and passes through the line; that as the steam under pressure comes into the line, heat also comes into the line and is transferred to the pipe; and that as the steam pressure builds up, the heat increases. The evidence clearly shows that there is a direct relationship between steam pressure and steam temperature. The testimony of plaintiff's engineers was squarely to the point that the damage to the steam line was caused by heat induced by and coming from the steam under pressure. To say, as defendant argues, that the heat was an independent force not directly related to and caused by the pressure of steam within the line is contrary to the evidence in the record before us. We hold that there was more than substantial evidence to justify the jury in returning a verdict for plaintiff in this case.

■ Where steam under pressure injected into a steam line induces heat which in turn results in damage to the line, it must follow that the steam pressure is the dominant efficient cause of the accident and resulting damage. See, Hartford Steam Boiler I. & Ins. Co. v. Pabst Brewing Co., 7 Cir., 1912, 201 F. 617, 626; American Steam Boiler Ins. Co. v. Chicago Sugar Refining Co., 7 Cir., 1892, 57 F. 294, 301, 21 L.R.A. 572. We hold that such an occurrence comes within the coverage of defendant's policy insuring against an accident "caused by pressure of steam."

We have considered the authorities cited by defendant and find that they are not controlling in the instant case.

Finding no error on the part of the trial court in denying defendant's motions for a favorable verdict, the judgment of the district court is

Affirmed.