William F. WOODS, Plaintiff-Appellee,

v.

GEIFMAN FOOD STORES, INC.,
Defendant-Appellant.

No. 13745.

United States Court of Appeals
Seventh Circuit.

Jan. 3, 1963.

Swygert, Circuit Judge, dissented.

Clarence H. Christiansen, Davenport, Iowa, Dale Ferguson, Rock Island, Ill.,

George A. Goebel, Davenport, Iowa, for appellant.

Frank G. Schubert, Rock Island, Ill., Moran, Klockau, McCarthy, Schubert, Henss & Lousberg, Rock Island, Ill., Peter H. Lousberg, Rock Island, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, SWYGERT, Circuit Judge, and GRUBB, District Judge.

HASTINGS, Chief Judge.

This was a diversity action brought by plaintiff, William F. Woods, appellee, against defendant, Geifman Food Stores, Inc., a corporation, appellant. Plaintiff sought to recover damages for personal injuries received by him in an accident which occurred on January 28, 1959 on premises owned and operated by defendant in Rock Island, Illinois.

Following a trial by jury, a verdict was returned in favor of plaintiff awarding damages in the sum of $38,500. Judgment was entered on the verdict from which defendant appeals.

Errors relied upon for reversal arise out of the denial by the trial court of defendant's motions for directed verdict, both at the close of plaintiff's case and at the close of the entire case.

Plaintiff was employed by River Fruit Company as a truck driver-delivery man. On the morning of the accident in question, he was delivering produce to his employer's customers. He was operating a truck with an insulated body. Shortly after 8:30 o'clock A.M., while delivering produce to defendant's store, he was seriously injured when pinned between the rear of his truck and defendant's building.

Seven days before the accident there had been a heavy snowfall (5 inches) in Rock Island, followed by a light snow four days later. There was alternate freezing and thawing weather during that week. The streets were all cindered, salted and cleared and it was not snowing or raining on the day of the accident.

The unloading area in the rear of defendant's store, where plaintiff was re-

quired to deliver and unload the produce, consisted of a concrete slab surface approximately 50 feet long (north to south) and 23½ feet wide (east to west). Immediately east of the slab and perpendicular thereto was a gravel surface street. The unloading door for plaintiff's use was on the east side of defendant's building and looked out onto the slab and gravel street. The door opened inwardly.

The concrete slab declined downward from the street grade to the unloading dock. The general area adjacent to the slab was higher than the slab itself. As a consequence, the depressed slab area was required to handle surface drainage from an area about 19 times greater than the surface area of the slab itself. A sewer drain or catch basin was located in the lower part of the concrete slab unloading area to carry away water from surface drainage.

At the time of the accident, the approaching street was clear of ice and snow. The concrete unloading area was covered with accumulated ice and snow. The sewer drain was covered with dirt and debris. The snow and ice on the unloading area had been driven over enough to form a slippery top crust on it. It was "icy" that day. No salt, cinders or other such materials had been applied to this icy surface.

Plaintiff drove his truck on the gravel street and approached the unloading area. He got out of the truck and opened its rear doors outwardly. He then proceeded to back his truck down the declining slab at a 90 degree angle toward the closed produce door. He had no difficulty backing his truck down the decline and stopped it with the open portion of the rear of his truck flush with the produce door.

With his rear truck doors open, there was a 9-inch space between the tailgate and the building. This was not sufficient to permit plaintiff to gain access to the closed door and produce dock. He got out of the driver's side of his truck and walked around the front to the opposite side of the truck body. He opened the unloading door on the side of the truck body and entered the truck through this side door. He walked through the truck and stood on the tailgate.

Defendant had provided a bell to the right of the produce door. It was located 6 feet 4 inches above ground level. The bell was used to signal defendant to open the produce door. Plaintiff stepped into the space between the open rear of the truck and the side of the building to ring the bell. No one answered and he pounded on the produce door.

When no one answered either the ring or the knock, plaintiff started to turn his body to go back through the truck. As he turned, the truck slipped or pivoted sideways to the north, on an angle, and his body was pinned between defendant's building and the hinged edge of the open truck door. He threw his hands against the produce door and the truck continued to slide sideways until it freed him.

When the produce door opened and help arrived, plaintiff was found sprawled on the tailgate between the truck and the unloading dock. He suffered serious personal injuries, the nature and extent of which are not challenged on this appeal.

Following the accident, plaintiff's truck slipped in being driven away. The ambulance attendant almost dropped the stretcher when he slipped while carrying plaintiff to an awaiting ambulance. It is not disputed that the surface of the unloading area was indeed "icy."

It is admitted that at the time of the accident plaintiff was a business invitee on defendant's premises.

Defendant asserts error in the denial of its motion for a directed verdict. In its brief, defendant paraphrases the grounds for such motion to be "(1) that plaintiff's complaint failed to state a cause of action upon which the relief requested could be granted in that it failed to allege excuse for not suing the condition allegedly causing the claimed injuries; (2) that plaintiff's evidence showed plaintiff to have assumed the risk in

the premise; (3) that plaintiff's evidence failed to show (a) defendant's knowledge of the dangerous condition, or (b) that defendant did not give plaintiff due and timely notice of the dangerous condition, or (c) that plaintiff had a valid excuse for not observing the dangerous condition, or (d) plaintiff's freedom from contributory negligence; and (4) that plaintiff's evidence conclusively showed (a) that the condition complained of was obvious, not hidden and discoverable by plaintiff in exercise of due care, and (b) that the condition complained of was the result of natural causes, and (c) that plaintiff's version of the occurrence was not only improbable, but physically impossible."

Defendant states eight contested issues and twenty-two propositions of law in support thereof.

Simply stated, however, the entire appeal is primarily concerned with the fundamental question of whether under the facts before us, as shown by the record, there was a case of liability properly made out to warrant a submission thereof to the jury for its determination.

We have faced up to this question many times and the appropriate governing rules are well established.

■ We must determine whether the evidence justifies submission of the case to the jury. Lambie v. Tibbits, 7 Cir., 267 F.2d 902, 903 (1959). In doing so, we must look to all the evidence in the record, together with all reasonable inferences to be drawn therefrom. Burg v. Great Atlantic and Pacific Tea Company, 7 Cir., 256 F.2d 613 (1958). Where such evidence and inferences, when viewed in the light most favorable to the party opposing a motion for a directed verdict, are such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions, such motion should be denied. Valdes v. Karoll's Inc., 7 Cir., 277 F.2d 637, 638 (1960). See also Kropp Forge Company v. Globe Indemnity Company, 7 Cir., 275 F.2d 539 (1960); Hardware Mutual Casualty Company v. Chapman,

7 Cir., 272 F.2d 614 (1959); Smith v. J. C. Penney Company, 7 Cir., 261 F.2d 218 (1958).

Each party cites a multitude of Illinois cases in support of various rules applicable to negligence cases about which there is no dispute. We shall not attempt to review them.

Paragraph 12 of the complaint sets out the allegations of causal negligence on which this action is founded:

"12. That Defendant, by its agents, servants and employees, was then and there guilty of one or more of the following negligent acts or omissions:

"a. Constructed and maintained said loading area in an uneven condition, thereby rendering same dangerous for the operation of motor trucks thereon.

"b. Permitted said loading area to be and remain in an icy, skiddy and slippery condition.

"c. Failed to move the garbage and debris from the sewer drain at the foot of said loading area, thereby causing water to accumulate and freeze therein.

"d. Failed to remove the snow and ice from said loading area.

"e. Failed to have the surface of said loading area covered with cinders, sand or gravel, or other substance which would prevent it from being icy, skiddy and slippery.

"f. Failed to give proper, or any, notice or warning to delivery or drayman, such as the Plaintiff, using said loading area that the surface thereof was icy, skiddy and slippery."

■ It is our judgment that the complaint, with its other relevant allegations, states a claim upon which the relief requested could be granted.

From the record before us, under the rules applicable thereto, the jury would have been warranted in finding (1) that defendant negligently permitted the icy condition in question to exist and, having knowledge of the same, failed to take

any reasonable precautions to avoid injury to plaintiff; (2) that defendant's negligence in creating the dangerous condition directly led to plaintiff's injury without any intervening cause; (3) that defendant should have foreseen that some injury might result from its negligence; (4) that plaintiff's injury was the natural and probable result of such negligence; (5) that plaintiff exercised due care for his own safety with full knowledge of the circumstances to which he lawfully exposed himself; and (6) that plaintiff did not assume the risk involved in entering defendant's premises as a business invitee.

In sum, we hold that this was a case for submission to the jury on the issues drawn on the complaint and the answer thereto. The evidence, with all reasonable inferences to be drawn therefrom, formed a sufficient basis for the jury verdict in favor of plaintiff. There was no error in overruling defendant's motions for a directed verdict.

Defendant complains of error in the failure of the trial court to give its tendered Instruction No. 17. We have examined this instruction and the court's stated reasons for refusing it. We find no error in such refusal. The jury was adequately and properly instructed without regard to such tendered instruction and no complaint is otherwise made as to any other instructions.

We have carefully examined and considered defendant's other contentions made on this appeal and find them to be without merit within the context of this case.

Finding no error, we hold that the trial court properly denied defendant's motion for a new trial.

The judgment for plaintiff appealed from herein is affirmed.

Affirmed.

SWYGERT, Circuit Judge (dissenting).

The rubric used by the courts to the effect that when the evidence and the legitimate inferences to be drawn therefrom are viewed in the light most favorable to the party opposing a motion for a directed verdict are such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions, the motion should be denied, means, phrased differently, that if the evidence and inferences are sufficiently equivocal so that there exist reasonable and logical factual grounds for the jury to decide either way, it is a jury question; but if the evidence is such as to afford no reasonable and logical basis for a verdict against the movant, the court will not permit the jury to decide willy-nilly.

In this case, the first question is whether there exists a reasonable and logical factual basis to permit the jury to decide that defendant breached its duty to exercise reasonable care in making its premises safe for its business invitees. I do not think there is such a basis.

Although the concrete unloading area was covered with snow and ice, the condition was not hidden or unknown to plaintiff. Moreover, even if there were more snow and ice on the unloading area because of the drainage situation, it cannot be said that the accretion made the area less safe for a 16,000 pound standing truck than had there been only the normal accumulation of snow and ice. This is so because of plaintiff's theory of how the accident occurred. That theory is that the truck tires, being warm from having been driven over the streets prior to pulling into the lot, caused the surface layer of ice to melt. This new interface of wet ice and rubber had a lower coefficient of friction than would have existed between an unmelted surface and the tires and enabled the truck to slip sideways a few minutes after it had been parked at the unloading dock.

This type of occurrence, resulting from a combination of physical factors the coincidence of which was obviously beyond the purview of the ordinary layman, was not such an event that the law should deem it a foreseeable risk and hence require defendant to ameliorate the

condition in order to satisfy its duty of care to its business invitees. I do not think the law of Illinois requires store proprietors to clean snow and ice from the loading areas adjacent to their establishments so as to prevent large multiton delivery trucks from slipping sideways after they have been parked, particularly where any possible dangerous condition is as obvious to all and knowledge of the possible physical consequences incident to the condition is more imputable to a truck driver than to the proprietor of a store.

This case, in my opinion, should be classified as one involving a "pure" accident. By allowing the verdict to stand, the trial judge permitted the jury to make the defendant an insurer of the safety of its business invitees contrary to the law of Illinois. I would reverse.