**Richard Hamilton, Plaintiff-Appellee, v. Milo Faulkner, Defendant-Appellant.**

**Gen. No. 10,809.**

Fourth District.

February 28, 1967.

Rehearing denied March 27, 1967.

Sebat, Swanson, Banks, Jones and Dukes, of Danville, for appellant.

John W. Unger, of Danville, for appellee.

SMITH, J.

Plaintiff-tenant sued his landlord-defendant to recover damages for personal injuries suffered when he fell from the roof of the demised premises while trying to fix a defective television antenna. The jury returned a plaintiff's verdict for $35,000, post-trial motion for judgment n.o.v., or, in the alternative, for new trial was denied. This appeal is from the judgment entered on the verdict.

In his memorandum opinion, the trial judge succinctly and accurately sets forth the facts as follows:

"The plaintiff, aged 36 years, married, was the tenant of the defendant. The defendant owned a duplex apartment. Each apartment consisted of a ground and upstairs floor. The defendant occupied one apartment and leased the other to the plaintiff. It was an oral lease, without any special provisions or limitations.

"At the rear there was a one story extension. The roof on this extension was hip-shape, but the slope was not great. A window in the upper story opened out upon and over this roof. In fact there were like windows in each apartment.

"A television aerial extended upward from this back room and alongside this window, and was fastened to the window casement by a clamp fastened to the casing by wood screws. This aerial served the plaintiff's apartment only, and was there when the plaintiff rented the apartment. The plaintiff hooked his television to this aerial. For some reason, the television reception was poor, the picture being clouded with 'snow.'

"The plaintiff complained to the defendant-landlord who stated he had asked some television repairmen to fix it. But no one responded. Finally the plaintiff again complained, and defendant told of his inability to get anyone to come repair it. This occasion was in the backyard in the presence of the defendant, plaintiff, plaintiff's wife and her son. According to the plaintiff either he or defendant observed that there appeared to be some looseness or 'play' at the point where the television pole was fastened to the window casing. They both expressed the opinion that possibly this looseness might be the cause of the trouble. Again the defendant stated he had been unable to get any repairman out to fix it, and that he, the defendant, didn't have the time and was too old to fix it himself. The plaintiff then suggested, in substance, that while he had very little experience with television, that possibly he might be able to fix or tighten this fixture, whereupon the defendant said, in substance, 'if you think you can fix it go ahead and fix it, it is all right with me.' The defendant denies he made the latter statement, but plaintiff is corroborated by his wife and her son. This language is most important to the issue. Just what did it import or imply? That was a question for the jury to determine. Apparently they construed it as an implied invitation to the plaintiff to make the repair. We cannot say such an interpretation was not a reasonable one."

■■ It thus appears that the plaintiff was not injured through the normal use, occupation and enjoyment

of the demised premises, but in undertaking the repair of the antenna at the request of the defendant. He was not on the roof repairing the antenna as a result of the landlord-tenant relationship or because of any obligation arising out of his lease. The antenna was in place at the time of the leasing, was apparently owned by the landlord and this record establishes that the obligation to repair was accepted and treated by the landlord as his. By his requests to the landlord to repair, the tenant too recognized the duty of the landlord to repair. The tenant was on the roof not because of any obligation or duty or right under the lease, but because of his acceptance of the landlord's invitation to attempt the repairs himself. His status was that of a business invitee and not that of a tenant. His status on the roof was no different than had he been a neighbor, an independent contractor or an employee of the defendant. The duty of the defendant to the plaintiff was incubated in the invitation to repair and not in the landlord-tenant relationship. The repair of the antenna was to the advantage of the landlord and perhaps to the mutual advantage of both the landlord and the tenant. Under such circumstances the status of the plaintiff was that of invitee and the duty of the defendant was to not negligently injure him. The applicable rule is stated in 38 Am Jur Negligence, § 96, page 754, as follows:

> ". . . The rule is that an owner or occupant of lands or buildings, who directly or impliedly invites others to enter for some purpose of interest or advantage to him, owes to such persons a duty to use ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purpose of invitation, or at least not to lead them into a dangerous trap or to expose them to an unreasonable risk, but to give them adequate and timely notice and warning of latent or concealed perils which are known to him but not to them. . . ."

162

What hazardous condition, either of the antenna or the roof, was known to the defendant and not known to the plaintiff which would give rise to a duty on the part of the defendant to warn the plaintiff? This record is silent. Plaintiff did not remember whether the antenna pole was secured at its base or elsewhere. The record is silent as to defendant's knowledge. A cursory examination by plaintiff would have revealed its true condition. The plaintiff testified: "The pole was a little wobbly. I observed this as I started to use the pliers and that is the last I remember—flying through the air." The antenna, the flashlight and the plaintiff fell from the roof together. Plaintiff further testified: ". . . I was familiar with the roof having seen it from the ground, but had never been on the roof prior to the accident. I had looked out on the roof many times from the window upstairs and could see the roof clearly from the window and from the backyard. The roof was sloping, but I considered it safe. . . ."

It is thus clear that any condition either of the roof or of the antenna was as readily apparent or known to the plaintiff as it was to the defendant. As was stated in Placher v. Streepy, 19 Ill App2d 183, 193, 153 NE2d 369, 374:

> ". . . There was no proof of a defect, but if a defect had existed, it should have been as apparent to the plaintiff as to the defendant. . . . If a patent defect existed plaintiff must have been able to discover the defect by a reasonable inspection. . . ."

■ This record fails to show either directly or by any reasonable inference that a latent defect known to the defendant contributed to the plaintiff's injuries or that any latent defect existed upon which to erect a duty of the defendant to warn. In the absence of such a duty, the record does not establish negligence on the part of the defendant as a matter of law. If, under the

evidence in this case, plaintiff is regarded as a licensee the duty of the defendant toward him is even less than that of an invitee and no breach of such duty is shown. 38 Am Jur Negligence, § 104. The trial court erred in failing to direct a verdict upon the failure of the plaintiff to establish a duty on the part of the defendant and a necessary element of a cause of action is missing. It follows that the judgment of the trial court must be reversed and it is so ordered.

Reversed.

CRAVEN, P. J. and TRAPP, J., concur.