Ralph Noe, Plaintiff-Appellee, v. Chicago Great Western Railway Company, a Corporation, Defendant-Appellant.

Gen. No. 52,581.

First District, Third Division.
November 6, 1969.
Rehearing denied October 30, 1970.

Winston, Strawn, Smith, and Patterson, of Chicago (Edward J. Wendrow and R. Lawrence Storms, of counsel), for appellant.

James A. Dooley, Clare J. Murphy, and Joseph P. Jenkins, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff brought an action to recover for injuries to person and property sustained in a grade crossing collision in Iowa on September 21, 1953, between a crane driven by the plaintiff and a train operated by the defendant. The claim is based on two counts: (1) common-law negligence, and (2) a violation of the Federal Safety Appliance Act. In a former trial the jury found for the defendant on Count One and the court directed a verdict for the defendant on Count Two. On appeal we reversed and remanded the cause for a new trial. Noe v. Chicago Great Western Ry., 71 Ill App2d 347, 219 NE2d 111. On retrial the jury returned a verdict for the plaintiff for $24,500. Judgment was entered thereon and defendant now takes this appeal. It contends: (1) that the plaintiff was guilty of contributory negligence as a matter of law; (2) that except when the doctrine of last clear chance is applicable, contributory negligence by the plaintiff is a complete defense to the charges of common-law negligence and violation of the Federal Safety Appliance Act; and (3) that plaintiff's allegation of defective brakes precludes the plaintiff from relying on the doctrine of last clear chance because under Iowa law, which is applicable here, the doctrine of last clear chance may not be invoked where the defendant's alleged negligence occurred prior to the plaintiff's contributory negligence. Except for the expert testimony as to the efficiency of the brakes on the train, the evidence at the second trial was substantially the same as that adduced at the first.

Plaintiff was an operator of heavy equipment and had been working with a crane at the Dubuque Sand and Gravel Pit adjacent to the track. The crane weighed 25 to 30 tons and from the front of it there extended a 42-foot

boom. It was self-propelled by a caterpillar type system with a maximum speed of two miles an hour. Plaintiff planned to move the crane from the gravel pit to another job site and had engaged a truck designed to carry heavy equipment. The pit was separated from a nearby highway by defendant's railroad track, and a private road connected the pit with the highway. Owing to the steepness of the grade and the low clearance of the truck, plaintiff decided to drive the crane under its own power across the grade crossing to the highway.

A provision of the Motor Vehicle Act of the State of Iowa required that vehicles of that character having a normal speed of six or less miles per hour may not be operated across a railroad grade crossing without notice first being given to a superintendent of the railroad in time for the railroad "to provide proper protection at such crossing." No effort was made by the plaintiff to give notice to any agent of the railroad although there was a local train dispatcher in a nearby office. The Act also required a person operating such a vehicle to stop between 10 and 50 feet from the nearest rail and look and listen for an approaching train. Iowa Code Ann, § 321.344.

At 5:00 a. m. on the morning of the accident plaintiff met the driver of the truck, John Reisdorf, at a restaurant about two miles from the gravel pit, stayed there 20 or 25 minutes and then went to a point near the highway side of the track where Reisdorf remained in his truck while plaintiff went to the pit. On the vehicle was a cab painted "highway yellow" which had a seat for the operator in the front on the right side. The cab had ample windows in front and on both sides, and in addition there was a door on the left side which was open that morning. The boom which was painted black had been lowered to a point 10 or 15 feet off the ground as was customary during travel, in order to give better vision and balance. Right behind the operator in the cab was the motor which made so much noise, the operator could not hear the sound of a train in motion, although plaintiff testified that on other occasions he had been able to hear train whistles. There were no lights anywhere on the crane.

Plaintiff testified that he stopped the crane at a point on the private roadway with the cab 50 feet from the

crossing, looked both ways, saw nothing approaching and started across at the full speed of two miles an hour. At that speed it took about 17 or 18 seconds to traverse the 50 feet to the crossing. Plaintiff testified that he did not look to the left again and did not know whether the train whistled or rang its bell. He said that all but eight inches of the rear end of the crane had cleared the track when the train coming from the left side hit the crane.

Reisdorf, the driver of the truck, testified that he remained in his parked truck on the highway side of the tracks with his view of the tracks largely obstructed by a billboard and that he first became aware of the train when it hit the crane. Plaintiff had not asked him to observe the tracks or flag down trains.

Crew members of defendant's train testified that the train's brakes had been satisfactorily tested minutes before the accident, the whistle had been blown at a whistling post 2,000 feet from the crossing, the fixed and oscillating headlights were on, illuminating the track for 1,000 feet and the automatic bell ringer was on. A quarter of a mile or more from the crossing, proceeding at 35 to 40 miles an hour, the engineer saw something on the track, quickly made out that it was a boom, set the brake in emergency and continuously sounded the whistle. At impact the train had slowed down to five miles an hour.

The engineer testified that when he asked whether the plaintiff had not seen the train's headlights, plaintiff replied that he "didn't look" and that he had never seen a train along there at that time of the morning. The conductor testified that in response to a question by the engineer, plaintiff said he had not heard the whistle because the machine made so much racket he could not hear anything. Another employee of the defendant, who happened along after the collision, testified that plaintiff asked, *"How come they run a train at that time of day?"*

Plaintiff presented the witness Clifford Moore as an expert on the efficiency of the train's brakes. He is a retired engineer with 35 years' experience with the Nickel Plate Road. In answer to a hypothetical question he testified that in his opinion a train traveling at 35 to 40

miles an hour, under the circumstances prevailing here and with the train in emergency application of its brakes, should have been brought to a full stop within 600 to 700 feet. He further testified that assuming the facts of the instant case, it was his opinion that the train's brakes worked ineffectively. He stated on cross-examination that an increase in air pressure in the train's brake lines from 70 to 100 pounds would just about double the braking ability; that there was a difference in the stopping distance between a train carrying 90 pounds of air pressure and one carrying 110 pounds; and that in giving his opinion *he assumed a "happy medium" between the two pressures.* It was stipulated that at the prior trial Moore had testified to a stopping distance of between 600 and 700 feet, but that at that time he had assumed the air pressure to be 110 pounds. Plaintiff's case is based on this uncertain testimony.

Arthur Johnson testified on behalf of defendant that he was the fireman on the train and that it carried 90 pounds of pressure on the day in question. Given essentially the same facts that were given to Moore, one Edward Bergman, called as a brake expert by defendant, testified that in his opinion if the train were traveling 40 miles per hour, it would come to a full stop within 1,321 feet, while at 35 miles per hour the stopping distance would be 971 feet.

Before considering the points made by defendant, we will consider plaintiff's contention that the law of the case doctrine estops defendant from making such points. Defendant contends that plaintiff was guilty of contributory negligence as a matter of law and that the Iowa doctrine of last clear chance should not be applied where, as here, the defendant's alleged negligence occurred prior to the plaintiff's negligence. Plaintiff contends that these points were adjudicated and rejected by this court on the prior appeal and that the law of case doctrine is applicable. This contention requires an analysis of our prior opinion.

In the first trial of the case the evidence adduced was much the same as in the instant trial, except for the expert testimony relevant to the condition of the train's

brakes. The trial court in the first trial directed a verdict for the defendant as to the count for violation of the Federal Safety Appliance Act and the jury found defendant not guilty as to the count for common law negligence. In reversing and remanding, we held that the trial court erred when it refused to allow the expert witness Moore to answer a hypothetical question relating to the stopping distance of the train. On rehearing the defendant properly pointed out that Moore's answer to the hypothetical question was later admitted, but we concluded that remandment was nevertheless required because of the trial court's original ruling and because of an assertion made by defense counsel in closing argument that the evidence in question had not been admitted. We held that the confusion in the record on that point required remandment despite what we observed was "overwhelming evidence of plaintiff's contributory negligence."

■ The law of the case doctrine provides that where the evidence on a subsequent appeal is the same as on the first or prior appeal, or substantially so, the adjudications of such first or prior appeal are binding on the reviewing court on a subsequent appeal. Hammer v. Slive, 35 Ill App2d 447, 183 NE2d 49; Bartels v. McGarvey, 331 Ill App 275, 73 NE2d 123. The points now raised by defendant in the instant case were not adjudicated in our prior opinion. Nowhere in that opinion did we consider the contention now raised by defendant that the doctrine of last clear chance does not apply where the defendant's negligence is antecedent to the plaintiff's contributory negligence, nor was the point raised by the parties in their briefs. Defendant argued that the doctrine of last clear chance should not be applied, but for a different reason. It argued that plaintiff's amended complaint made inconsistent charges relating to the last chance doctrine and we held against it on that point in our prior opinion.

■ ■ In the first appeal the defendant was the appellee, having obtained a judgment in its favor in the trial court. As appellee it was required only to answer plaintiff's assignments of error. It had no duty to assign cross-errors nor was it estopped from raising the

error on subsequent appeals. Novitsky v. Knickerbocker Ice Co., 276 Ill 102, 114 NE 545. Defendant has the right now, judgment having been rendered against it, to raise all contentions not previously adjudicated against it by this court. There having been no adjudication on the prior appeal as to the question of applicability of the doctrine of last clear chance where the defendant's negligence is antecedent to the plaintiff's contributory negligence, we proceed to consider defendant's contentions.

■ Defendant's first contention is that plaintiff was guilty of contributory negligence as a matter of law. Under Iowa law plaintiff's violation of the statute relating to the operation of vehicles across grade crossings constituted contributory negligence as a matter of law unless plaintiff could show a legal excuse therefor. Van Patten v. Chicago, R. I. & P. R. Co., 251 Iowa 1221, 102 NW2d 898 (1960); Wachter v. McCuen, 250 Iowa 820, 96 NW2d 597 (1959); Kisling v. Thierman, 214 Iowa 911, 243 NW 552 (1932); Chicago, R. I. & P. R. Co. v. Breckenridge, 333 F2d 990 (CA 8th Cir 1964). Plaintiff in the instant case offered no excuse for his violation of the Iowa statute regulating the movement of heavy equipment across railroad crossings (Iowa Code Ann, § 321.-344). To disregard the requirements of that statute and to proceed to drive a crane weighing some 30 tons with a 42-foot boom protruding from the front and limited to a creeping pace of two miles per hour across railroad tracks is negligence as a matter of law.

■ Contributory negligence is a bar to plaintiff's recovery whether his case is based on a theory of common law negligence (Yance v. Hoskins (Iowa), 281 NW 489 (1938); Hogan v. Nesbit, 216 Iowa 75, 246 NW 270 (1933)), or on a violation of the Federal Safety Appliance Act. Crane v. Cedar Rapids & Iowa City Ry. Co. (Iowa), 160 NW2d 838 (1968). That decision was affirmed by the United States Supreme Court in 395 US 164. Consequently the doctrine of last clear chance, on which plaintiff relies, is vital to his case.

Defendant contends that the doctrine does not apply where the defendant's negligence occurred prior to the plaintiff's contributory negligence, or, in other words,

that the doctrine of last clear chance applies only where the defendant knew or should have known of the plaintiff's peril and having the ability to avoid injury, failed to do so. It argues that accepting the plaintiff's theory of the case, the defendant's train was equipped with defective brakes at the time or before it discovered the plaintiff's peril and hence the doctrine does not apply. As stated in our previous opinion, the doctrine under the law of Iowa "presupposes proof of plaintiff's contributory negligence and permits recovery where defendant (1) has actual knowledge of plaintiff's situation, (2) realizes or should realize that he is in peril, and (3) *having the ability* to avoid injury to plaintiff thereafter fails to do so." (Emphasis added.) Noe v. Chicago Great Western Ry., 71 Ill App2d 347, 219 NE2d 111; Vreugdenhil v. Kunkel, 256 Iowa 1311, 127 NW2d 630 (1964); Tilghman v. Chicago & N. W. Ry., 253 Iowa 1339, 115 NW2d 165 (1962). It is what the *defendant did or failed to do after it discovered that plaintiff was imperiled* that constitutes the breach of duty for which the defendant is held liable under the doctrine of last clear chance. That doctrine cannot rest upon a breach of duty by the defendant before the peril arose, variously referred to as "primary," "antecedent," "preexisting," or "prior" negligence. 70 ALR2d 22, 38 Am Jur, Negligence, § 218; Menke v. Peterschmidt, 246 Iowa 722, 69 NW2d 65 (1955); Vreugdenhil v. Kunkel, supra. In the Vreugdenhil case the Iowa Supreme Court rejected the interpretation of last clear chance as urged by the plaintiff and held (p 634) that "It is only defendant's negligence *after* he discovers, or in the exercise of due care should have discovered, the plaintiff's danger that brings the doctrine into effect."

Plaintiff argues that a violation of the Safety Appliance Act is determined as of the time the brakes actually failed to operate properly, not at the time the train was placed on the tracks with defective brakes. Hence, it is argued, the wrongful act occurred after plaintiff's contributory negligence and cannot be said to be antecedent. This argument misapprehends the theory behind the doctrine of last clear chance.

Under Iowa law contributory negligence is a defense to a violation of the Safety Appliance Act as well as to an action for common law negligence. Crane v. Cedar Rapids & Iowa City Ry. Co. (Iowa), 160 NW2d 838, affd 395 US 164 (Iowa 1969). In Fairport, P. E. R. Co. v. Meredith, 292 US 589 (Iowa 1934) the court held that the Safety Appliance Act does not affect the defense of contributory negligence and that the defense must be determined in accordance with *applicable state law*. In Iowa the doctrine of last clear chance stands as an exception to its general rule that contributory negligence is a complete bar to recovery in an action for negligence or violation of statute. If the requirements of the doctrine are not met, the general rule applies and in this case the essential element of that doctrine is lacking, to-wit: that the defendant, *after perceiving the plaintiff's peril,* had the ability to avoid injuring him.

Plaintiff cites Fairport, P. & E. R. Co. v. Meredith, 46 Ohio App 457, 189 NE 10 (1933) for the contrary proposition that a defendant may be liable under the doctrine of last clear chance in cases arising under the Safety Appliance Act, even though its negligence is antecedent or prior. That case represents a minority view. The reasoning of the Ohio court in Fairport was rejected in Andersen v. Bingham & Garfield Ry. Co., 117 Utah 197, 214 P2d 607 (1950) as follows (p 613):

> "Assuming that the defendant in the instant case did not operate its train with defective brakes in violation of the Safety Appliance Act, its negligence may be a greater 'wrong,' as the Fairport case seemed to indicate, but its negligence is not a later 'wrong' which the doctrine of last clear chance contemplates and operates upon."

This conforms to the Iowa law. Regardless of when the alleged violation of the Safety Appliance Act occurred, the plaintiff has failed to present a case for the application of the doctrine of last clear chance and the judgment must be reversed.

Judgment reversed.

DEMPSEY, P. J. and DRUCKER, J., concur.