CHARLOTTE M. SEPESY, Indiv. and as Adm'r of the Estate of Joseph Andrew Sepesy, Deceased, Plaintiff-Appellee, *v.* ARCHER DANIELS MIDLAND COMPANY, Defendant-Appellant.

Fourth District   No. 16338

Opinion filed June 30, 1981.

GREEN, J., dissenting.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, and Heyl, Royster, Voelker & Allen, of Peoria (Carl R. Miller and William Voelker, of counsel), for appellant.

Delano Law Offices, P. C., of Springfield (David A. Stjern and Patrick James Smith, of counsel), for appellee.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

This appeal arises as a result of the second trial of this personal injury action. On December 18, 1972, plaintiff's decedent, Joseph Sepesy, a truck driver, was waiting to unload the grain carried by his truck, in a line of trucks at defendant, Archer Daniels Midland's west grain dump. Sepesy was standing between his truck and the truck directly in front of his truck. Both trucks were on a "ramp" with a slight incline, and the truck in front apparently rolled back, in an attempt to engage its gears and move forward, and crushed Sepesy between the trucks, causing his death. The lawsuit is based upon defendant's responsibility arising out of ownership and control of the land on which the accident occurred.

The first trial ended with a directed verdict for the defendants at the close of plaintiff's case. (The first trial also involved the driver of the other truck who was not a party to the second trial.) On appeal, this court held that a jury question existed as to whether the ramp created an unreasonably dangerous condition and thus, whether the defendant breached its duty to Sepesy, a business invitee. (*Sepesy v. Fuller* (1978), 59 Ill. App. 3d 56, 375 N.E.2d 180.) The supreme court subsequently remanded the case to the appellate court to consider the questions of contributory negligence and proximate causation. (*Sepesy v. Archer Daniels Co.* (1978), 71 Ill. 2d 615.) The appellate court issued a supplemental opinion finding jury questions existed on both issues. (*Sepesy v. Fuller* (1979), 66 Ill. App. 3d

1053, 384 N.E.2d 1378.) The second trial, subject to the instant appeal, concluded with a jury verdict in favor of plaintiff in the sum of $351,793.

The testimony relevant to the determination of this appeal follows. According to police officers who investigated the accident, there were no eyewitnesses to the incident. Carl Hobson, a truck driver of 25 years, was at the Archer Daniels Midland (ADM) plant, loading his truck on the date of the accident. Someone came over to Hobson and asked him to come and identify a truck driver who was "down." Hobson went over to the ramp and saw Sepesy lying face down in front of his truck, without his coat on. Sepesy appeared unconscious to Hobson.

There is no testimony as to the act of any person or of any occurrence immediately prior to, and at the time of the injury. It appears that Sepesy's truck was on the ramp in line to unload grain and Hobson went into the truck and noticed that the ignition was off, the brakes were on, and Sepesy's coat was inside the truck. At that time there was no truck in front of the Sepesy truck. According to Hobson, the weather at the time was snowing and was wet and the ramp had snow, water, and mud on it. Hobson stated that truck drivers know that trucks which operate by a clutch might roll backwards before going forward when engaging their gears on a ramp. Hobson expected that Sepesy also knew that fact. One of the things that would determine how much a truck would roll back would be the traction on the ramp. Hobson could recall no devices on the date of the accident to prevent trucks from rolling backwards on the ramp in bad weather, although Hobson admitted the concrete surface of the ramp provided a good basic traction for trucks. Hobson stated that he had unloaded grain at the ADM plant on the average of two times per week, during an unspecified number of years. Hobson had seen Sepesy unloading grain on previous occasions, with his truck on the ramp, but did not recall ever seeing Sepesy stand between two trucks parked in line.

Marshall Shutt, a grain dealer and owner of numerous grain elevators and trucks, testified that Joseph Sepesy was one of the drivers in his fleet, and Shutt testified to Sepesy's wages. Shutt stated that Sepesy was a good truck driver, and that during the 8 to 10 years of his employment with Shutt, Sepesy had made 300 to 400 trips or more to the ADM plant where the accident occurred.

Three other witnesses testified that Sepesy was a good, careful truck driver. One of the three, a truck driver, gave his opinion that the ramp to the dump where the accident occurred had a very slight incline.

Two expert witnesses testified. Plaintiff's expert testified that he examined the ramp and made calculations by which he determined that the grade or incline of the ramp was approximately 8 percent or degrees. He also gave his opinion that the ramp and incline were unsafe for truck drivers. Defendant's expert also examined the ramp and estimated that

the incline portion of the dump was 30 feet long. He determined, based on accurate measurements by a surveyor, that the percentage of incline or the grade on the ramp was 4.19 percent. This evidence was not in the record on the prior appeal. In the opinion of defendant's expert, the ADM dump and ramp met the usual and customary standard engineering practice. The two experts disagreed over which, if any, books, manuals and statutes established safety standards for the construction of ramps to grain dumps. The experts were also in conflict over the need and practicality of "safety devices" on the ramp.

The jury returned a verdict in favor of plaintiff in the sum of $351,793. The trial court entered judgment on the verdict. Defendant's post-trial motion which requested, alternatively, judgment notwithstanding the verdict, a new trial, or remittitur, was denied by the trial court, from which denial defendant has appealed.

Plaintiff's brief states that she does not contend that the construction of the ramp with an incline of 4.19 percent created an unreasonable risk. It is contended:

> "The unreasonable risk is found in the defendant's construction of the ramp without any regard for the safety of the persons using the ramp and failing to apply the proper safety standards."

Defendant's principal contention on appeal is that, under the circumstances, it owed Sepesy no duty to provide safety devices on the ramp or to warn Sepesy of the dangers inherent in the ramp, under the facts of this case, based on the rule announced in the Restatement (Second) of Torts, sections 343 and 343 A (1965). All parties agree that Sepesy was a business invitee. There is further agreement that Illinois has adopted the position of the Restatement (Second) of Torts, sections 343 and 343 A, with regard to the duty owed to business invitees by owners and possessors of property. *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465.

■■ Plaintiff asserts that our prior opinions in this case dispose of defendant's contention, and that we are bound by our prior opinions in this case which constitute "law of the case." As recently stated, "under the 'law of the case' doctrine, this court is bound by the particular views of law announced in our prior opinion in a case, unless the facts presented require a different interpretation." (*Bradley v. Howard Hembrough Volkswagen, Inc.* (1980), 89 Ill. App. 3d 121, 124, 411 N.E.2d 535, 537.) In the previous decisions in this case, it was held that jury questions were present and that it was proper for the jury to determine (1) whether the ramp was a dangerous condition, (2) whether Sepesy was contributorily negligent, and (3) whether proximate causation existed linking defendant with Sepesy's injury.

In the first appeal, however, the plaintiff was appealing from a

directed verdict in defendant's favor, and in the case at bar defendant is the party appealing. This particular situation was discussed thoroughly by the court in *Noe v. Chicago Great Western Ry. Co.* (1970), 130 Ill. App. 2d 36, 41-42, 263 N.E.2d 889, 893, where the court stated:

"The points now raised by the defendant in the instant case were not adjudicated in our prior opinion. Nowhere in that opinion did we consider the contention now raised by defendant that the doctrine of last clear chance does not apply * * *.

In the first appeal the defendant was the appellee, having obtained a judgment in its favor in the trial court. As appellee it was required only to answer plaintiff's assignments of error. It had no duty to assign cross-errors nor was it estopped from raising the error on subsequent appeals. [Citation.] Defendant has the right now, judgment having been rendered against it, to raise all contentions not previously adjudicated against it by this court."

In applying the foregoing reasoning to the instant case, we note that in the first appeal, the duty owed by defendant to Sepesy was simply stated as, "the duty of exercising ordinary and reasonable care to see that the premises are reasonably safe for use by the business invitees." 59 Ill. App. 3d 56, 59, 375 N.E.2d 180, 182.

Section 343 of the Restatement (Second) of Torts was not mentioned by the court in its earlier decision. As a result of the directed verdict in its favor, defendant did not present a defense in the first trial. Upon retrial, defendant's defense was based upon the Restatement position that in certain circumstances, where obvious hazards are involved, the owners and possessors of land are relieved of the above quoted "duty." Thus, the applicability of section 343 of the Restatement (Second) of Torts to the facts of this case is now before this court for the first time.

Section 343 of the Restatement provides:

"Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts §343 (1965).

Section 343 A, the companion section, provides:

"Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose

danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated." Restatement (Second) of Torts §343 A (1965).

In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, plaintiff asserted that the landowner negligently failed to warn that certain electric transmission lines were dangerous in the placing of an antenna. The court determined that the existence of a duty to warn on the part of the landowner is a question of law and not of fact. In *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709, *appeal denied* (1979), 72 Ill. 2d 582, plaintiff alleged that defendant was negligent in failing to warn of the condition of its poles on which plaintiff was working, and that defendant was negligent in maintaining the poles. The reviewing court reversed the trial court's denial of a motion for judgment *n.o.v.*, citing section 343 of the Restatement (Second) of Torts as stating the law in this State. The court said:

"Thus under section 343, the liability of a possessor of land cannot merely be predicated upon proof of a dangerous condition on the premises, there must also be proof that the condition was a latent or concealed one, or was existing under circumstances in which it would not be expected to be discovered by the invitee. Generally, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. (*Genaust v. Illinois Power Co.*; *Stambaugh v. Central Illinois Light Co.*; *Hamilton v. Faulkner*, 80 Ill. App. 2d 159, 224 N.E.2d 304.) A possessor of land is not an insurer for all accidents occurring upon his premises. 'A business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land.' *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 469, 343 N.E.2d 465, 472." 64 Ill. App. 3d 634, 639-40, 381 N.E.2d 709, 714.

■■ We consider whether the danger was known and obvious. The testimony and photographs introduced into evidence make it clear that the slight incline in the ramp was apparent and obvious. Testimony also established that truck drivers in general, and Sepesy specifically, were aware of the propensity of trucks to roll backwards on inclines when engaging gears to move forward.

■■ Although the danger was of an open and obvious nature, plaintiff contends that defendant still had a duty to warn Sepesy and to protect

him from the danger. To the contrary, we agree with the position taken by the drafters of the Restatement:

"In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. * * * Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them." Restatement (Second) of Torts §343 A, comment e, at 219 (1965).

■■ A third element of sections 343 and 343 A is whether the circumstances are such that defendant should have anticipated harm to Sepesy despite the obviousness of the condition. (Genaust v. Illinois Power Co. (1976), 62 Ill. 2d 456, 469, 343 N.E.2d 465, 472.) The Restatement notes that there are certain circumstances where, despite the obviousness of the danger, a possessor of land should anticipate harm to an invitee and warn or protect the invitee from such danger. Two examples given by the comments to the Restatement of such a situation are (1) where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it; or (2) where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. Restatement (Second) of Torts §343 A, comment f, at 220 (1965).

The specific risk taken by Sepesy was the act of standing between two trucks, in line, on the incline. No distraction is factually indicated which would have made Sepesy forget or fail to realize the danger of standing between two trucks on the slight incline. There was conjecture at trial that Sepesy was wiping off his windshield at the time, but assuming that was the case, there was still no reason for defendant to suspect that Sepesy would encounter the risk of standing between two trucks merely to wipe off his windshield.

Plaintiff asserts that the leading cases in Illinois applying section 343 of the Restatement (Second) of Torts are so factually distinct that they cannot even be considered analogous. (Genaust; Longnecker v. Illinois Power Co. (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709.) In Genaust, based on section 343, the court absolved a landowner of liability to a business invitee for an accident caused by power wires, owned and maintained by a power company, which were close to the boundary of the landowner's property. But the court based its decision in part on the obviousness of the danger presented by the overhead power wires and stated:

"Furthermore, we note that count VI fails to allege that the wires in question were either hidden or concealed. As it is common

knowledge that electricity is dangerous, so is it also common knowledge that any line or wire carrying electricity is dangerous. The potential risk of installing metal equipment in close proximity to power wires is apparent. A business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land." 62 Ill. 2d 456, 469, 343 N.E.2d 465, 472.

In the case at bar the incline was apparent. While it might not be considered common knowledge that trucks roll backwards on an incline when they engage their gears, the only members of the public on this particular incline were truck drivers, and as previously stated, the propensity of trucks to roll backwards on inclines was common knowledge among truck drivers. The evidence discloses that plaintiff's decedent was aware of the condition in that he had set the brakes of his vehicle. It is clear that the decedent had delivered grain to the site on between 300 and 400 different occasions, and thus had substantial opportunity to be familiar with the nature of the driveway and ramp.

Thus, we conclude that defendant had no duty to warn Sepesy of the danger of the incline or provide safety devices for Sepesy's protection. We find that the trial court should have granted defendant judgment notwithstanding the verdict on this basis. Based upon our decision of this issue, we need not address the other issues raised by defendant on appeal. A comment made by Justice Swygert accurately sums up the problem in this case. He stated:

> "This case, in my opinion, should be classified as one involving a 'pure' accident. By allowing the verdict to stand, the trial judge permitted the jury to make the defendant an insurer of the safety of its business invitees contrary to the law of Illinois." *Woods v. Geifman Food Stores, Inc.* (7th Cir. 1963), 311 F.2d 711, 715.

Accordingly, we reverse.

Reversed.

MILLS, J., concurs.

Mr. JUSTICE GREEN, dissenting:

I disagree with the majority's analysis of whether the "law of the case" doctrine is applicable here. I conclude that it is and that it requires us to affirm. Accordingly, I dissent.

On the first appeal, this court held that a jury question existed as to (1) whether defendant was under a duty to either provide devices to prevent trucks on the ramp from rolling backward or to provide procedures or devices to keep persons from standing in or around the

ramp in dangerous places, and (2) whether defendant had breached that duty. The majority now holds that under the rationale of Restatement (Second) of Torts, sections 343 and 343 A, and cases in conformity therewith, defendant had no such duty because any danger in the ramp and its operation was obvious to plaintiff's decedent. I deem neither the additional evidence at the second trial nor the different posture of the case on this appeal to remove the case from the doctrine of the "law of the case" and to permit a different determination as to the duty of the defendant.

The new evidence of substance at the second trial was the testimony of the defendant's expert that the grade of the ramp's incline was only 4.19 percent and that the ramp and dump met usual and customary safety standards. This evidence concerned the question of whether the ramp was dangerous. If it had been conclusive on that question, we would be free to hold, as a matter of law, that the ramp was not dangerous and, therefore, defendant did not tortiously injure plaintiff's decedent. However, no contention is made that a fact question did not exist as to whether the ramp was dangerous. Rather, reversal is ordered upon the basis that defendant owed no duty because any danger in the ramp was obvious. The new evidence did not speak to that question.

While defendant was appellee on the first appeal and is now appellant, the issue of whether defendant owed a duty arose from the original complaint and not from any affirmative defense or counterclaim. It was before the trial court when it made its original determination to direct a verdict at the close of the plaintiff's case. The issue was before this court on the first appeal, and defendant could have argued and the court could have deemed applicable the quoted provisions of the Restatement (Second) of Torts and the theory of the supporting cases at that time. The issue is not one which would have been raised by cross-appeal.

Courts adjudicate issues and not reasons. The issue before us has been adjudicated at the appellate level previously in this case. We cannot make a different adjudication of that issue merely because reasons which were previously either (1) not presented, (2) rejected, or (3) overlooked are now deemed to require a different adjudication.

To the extent that my views differ from those expressed in *Noe v. Chicago Great Western Ry. Co.* (1970), 130 Ill. App. 2d 36, 263 N.E.2d 889, I am in obvious disagreement with that opinion.