ALFRED BEHRSTOCK, Plaintiff-Appellant, *v.* ACE HOSE & RUBBER COMPANY *et al.*, Defendants-Appellees.

First District (5th Division) No. 81—2557

Opinion filed May 20, 1983.

Thomas F. Ging and Steven A. Weiss, both of Reuben & Proctor, of Chicago, for appellant.

Irving B. Ribstein, Ltd., of Chicago (Irving B. Ribstein and Eugene Lieberman, of counsel), for appellees.

JUSTICE MEJDA delivered the opinion of the court:

Plaintiff Alfred Behrstock (hereinafter Alfred), a 50% owner, officer, and one of two directors of five closely held corporations, brought this suit to set aside a written employment contract executed on behalf of all five companies by plaintiff's brother, Eugene Behrstock (hereinafter Eugene), in favor of Eugene's son, Bruce Behrstock (hereinafter Bruce), and for accounting and other relief. After a trial, the trial court denied the relief sought in plaintiff's complaint and held that the written contract was valid and enforceable as against the five corporations.

Plaintiff appeals, contending that: (1) the employment agreement is an extraordinary contract and beyond the authority of Eugene to execute on behalf of the corporations, absent approval of the board of directors; (2) the trial court erred in finding that the employment contract was ratified by Alfred; and (3) the trial court erred in finding that Eugene exercised "complete control" over the "Ace Companies."

The evidence presented as to the following preliminary matters is largely undisputed. Plaintiff Alfred and defendant Eugene are brothers. Each controls 50% of the stock of five closely held corporations. Those companies, Ace Hose & Rubber Company, Ace Lite-Step Company and Ace Stretch Hose Company (hereinafter the Ace Companies), L. Behrstock & Company, and 1708 South State Street Building Corporation (hereinafter Building Corp.), are also defendants. The companies sell industrial rubber products and pressing equipment, except the Building Corp., which owns the property and buildings in which the others operate. Defendant Bruce is Eugene's son and Alfred's nephew.

The companies were originally founded in 1943. They were incorporated in 1956 or 1957. Alfred is the president of the Building Corp. and L. Behrstock & Company. He is also secretary-treasurer of each of the three Ace Companies. Eugene is the president of the Ace Companies and secretary of the other two companies. During all relevant times, Alfred owned 50% of the stock of each company. Eugene

owned the other 50% until 1972, when he began transferring stock to his son Bruce. Alfred and Eugene are the only two directors of each of the five companies and Bruce is neither a director nor an officer of any of them.

In 1970, Eugene employed his son Bruce as a comptroller and by 1973, Bruce had become assistant to the president, and general manager of the Ace Companies. In 1975, Eugene retired from the companies but continued to consult with Bruce, who by that time had taken over Eugene's managerial duties. As salary, Bruce was paid approximately $700 per week during the period preceding 1978; however, no written employment contract had been entered into between the parties.

At a time during 1978, Eugene and Bruce suggested to Alfred that a written contract be entered into concerning Bruce's employment with the companies. By this time Bruce was managing all five companies. In June 1978 Alfred refused, telling Bruce, "It's entirely out of the question." Despite this refusal, Bruce negotiated terms with Eugene resulting in the employment agreement which is the subject of this suit.

During a meeting of the board of directors in September or October, 1978, Eugene brought up the topic of a written employment contract for Bruce, and Alfred again refused. Alfred's position was that Bruce would continue to receive a share of the profits, but that no written contract was necessary. It was known by Bruce, at the time of the meeting, that Alfred would not approve a written contract. The meeting erupted into an argument and Alfred left the room.

On December 16, 1978, Alfred received a letter from Bruce and a copy of the written employment agreement entered into between Bruce and the five companies. This was the first time that Alfred was aware of the contract. The agreement was signed on behalf of the companies by Eugene as "President" of the Ace Companies and as "Vice-president" of L. Behrstock & Company and the Building Corp. Defendants have admitted that Eugene is not a "Vice-president" of either of these two companies, although he was secretary. It is undisputed that Alfred did not sign the employment agreement nor did he authorize Eugene to enter into the contract on behalf of the companies.

Under the agreement, Bruce was employed as general manager of the five companies for a term of five years. The contract terms provided, *inter alia*, for (1) a retroactive salary increase from $36,000 to $52,000 per year; (2) a bonus of 3% based upon gross sales up to $2,000,000 and 4% if the sales exceeded this amount; (3) an additional

bonus of 20% of the adjusted net profits of all five companies; and (4) if the companies were sold under certain conditions, Bruce was to receive 20% of "the gross sale proceeds over and above any amount by virtue of his stock ownership."

On January 5, 1979, Alfred sent a registered letter to Eugene expressing his disapproval. In the letter Alfred stated that the agreement was not presented to, or approved by, the board of directors; that he would not consent to the agreement; and that he considered the agreement illegal and void. Alfred thereafter initiated this action on February 16, 1979.

Defendants presented the following evidence to establish Eugene's authority to bind the companies to the employment agreement sued on: Eugene testified that from their inception, the Ace Companies were managed entirely by him. He testified that pursuant to an oral agreement in 1956 or 1957, entered into between Alfred and himself, it was agreed that he would have "100 percent of the say of running the *** rubber business *** lock stock and barrel." Alfred, in turn, would have "all the say of running L. Behrstock & Co. We shook hands. We had a deal." Under this arrangement, Eugene was to receive "20 percent of the profit of the Ace Companies off the top."

Thereafter, until his retirement in 1975, Eugene managed the Ace Companies. Alfred managed L. Behrstock & Company. Eugene testified that "for the Ace Companies, every facet of the business, I made the decisions, sources of supply, who was hired, who was fired, everything." He also set company policies, supervised the employees, negotiated with the unions, and he executed all contracts, including all employment contracts. He testified that he had, over the years, hired all the employees of the Ace Companies; that some of the key employees had been given percentages of the profits of the companies; that no employment contract was ever submitted for approval by the board of directors; and that the only employment contract to be challenged was the contract sued upon.

Eugene testified that annual board meetings were held in October for the voting of bonuses, at which he, Alfred and the company accountant were present. At these meetings the accountant would recommend to him bonus figures. He then would customarily take his 20% off the top and the remainder was split between the two brothers. He admitted that the amount of bonuses was agreed to jointly saying, "if there were further bonuses to be paid, it was decided between Alfred Behrstock and myself." At these meetings Eugene would normally present the profit figures for the Ace Companies and

ask for Alfred's approval as to a division thereof.

Finally, over many years, Eugene expanded the Ace Companies by acquisition of a number of other companies. Each deal was negotiated by him without once consulting Alfred or the board of directors. When he retired completely from the companies in 1975, Bruce assumed his duties as general manager. Although he thereafter moved to Florida, he continued to "consult" with Bruce by telephone regarding company matters.

Alfred's testimony as to the foregoing matters conflicted in the following relevant details. Alfred testified that prior to 1972, both brothers managed the five companies. Eugene worked primarily with the three Ace Companies and Alfred worked primarily with L. Behrstock & Company and the Building Corp. During the late 1960's or early 1970's, Eugene spent a substantial amount of time in Florida and, thus, an "understanding" was reached between the two that Alfred would manage all of the companies for six months of the year, and Eugene would manage them for the other six months. He testified that in 1968, as a result of the six months division, Eugene's flat 20% bonus was suspended by their mutual agreement and was never reinstated. He stated that each year he and Eugene would agree as to both the amount and distribution of bonuses at the annual meeting, including a bonus to Bruce. In addition to any such bonus, Eugene would also give a portion of his own bonus to Bruce.

The evidence is undisputed that Bruce, who had been managing the Ace Companies since approximately 1973 without a contract, has continued to do so since the institution of this action. He has also been helping run L. Behrstock & Company and the Building Corp., although Alfred retained ultimate control of those two companies. Bruce testified that his duties did not change to any considerable extent after the instant contract was signed.

After trial, the trial court found that Alfred had objected to the employment agreement, but that Eugene had exercised "complete control" over the Ace Companies and thus had total authority to bind those companies to the instant contract without prior approval by the board of directors. The trial court further held that as to the other two companies, although Eugene exercised no control over them, Alfred implicitly ratified the contract by acquiescing to Bruce's management and control of the five companies. Accordingly, the trial court declared the contract to be valid and enforceable.

OPINION

■ We first address plaintiff's contentions challenging the trial

court's findings with respect to the Ace Companies. As the principal ground for reversal, he contends that the employment contract is an extraordinary and unusual contract and thus beyond the authority of Eugene to execute, absent board approval. It is well established under Illinois law that a contract to pay as compensation a percentage of the net profits of a corporation is not a usual and ordinary contract, and that under most circumstances the president of the corporation has no authority, absent authorization by the board of directors, to enter into any such unusual or extraordinary contract on behalf of the corporation. (See, *e.g., Southwest Forest Industries, Inc. v. Sharfstein* (7th Cir. 1972), 482 F.2d 915, 925; see also *Jaffe v. Chicago Warehouse Lumber Co.* (1954), 4 Ill. App. 2d 415, 124 N.E.2d 618; *Sacks v. Helene Curtis Industries, Inc.* (1950), 340 Ill. App. 76, 91 N.E.2d 127.) However, an exception to this rule may arise when a corporation allows its president to assume "complete control" over its affairs. In such situations, the officer exercising such control is said to hold, *prima facie*, the power to bind the corporation to such contracts. (*Jaffe;* see also *Joy v. Ditto, Inc.* (1934), 356 Ill. 348, 190 N.E. 671.) A corollary to this exception, however, is that the power may be rebutted where it is affirmatively shown that such contracts were unauthorized. *Joy v. Ditto, Inc.*

Regarding the portion of the order holding the Ace Companies bound to the employment contract, it is clear that the trial court relied solely upon the "complete control" exception espoused in the *Jaffe* case.

■ Initially, we note that there is no valid contention here that the contract at issue was not unusual or extraordinary, for not only did it provide for payment of a percentage of net profits, but it further entitled Bruce to 20% of the gross sale proceeds, over and above any stock ownership, if the companies were sold to a third party. Secondly, there is no dispute that no action was taken by the board of directors authorizing Eugene to enter into this contract on behalf of the corporation. Finally, the record plainly establishes that the contract was executed over the express and repeated objections of Alfred. Under such facts plaintiff argues that the *Jaffe* "complete control" exception has no application. It is further argued that this exception was too broadly construed by the trial court since it establishes only *prima facie* power to bind the corporations, which plaintiff contends is fully rebutted on this record.

Upon careful review of the principles illustrated in *Jaffe*, we find that its premises were misconstrued as the applicable rule of law in the instant case. In *Jaffe*, as an equitable measure, the appellate court

applied an exception to the rule ordinarily limiting the authority of the president to bind a corporation to extraordinary or unusual contracts in the absence of action by the board. The circumstances giving rise to the exception in *Jaffe*, however, are distinguishable from those at bar. There, an aggrieved employee, hired by the president under a contract which provided for a percentage of the net profits, was denied his share of the profits after more than a year of employment with the defendant corporation. The corporation was solely owned by the president and his wife; the only directors were the president, his wife, and their minor son. The corporation was so totally dominated and controlled by the president that he was held to have been the "alter ego" of the corporation. Moreover, no member of the board had ever countermanded any decision of the president, including the contract sued on. The corporation, in defending the suit, raised the defense of lack of authority of its president to bind the corporation to the disputed agreement. This was done as an "afterthought" at trial. Under these circumstances, the court applied the principle that a corporation would not be permitted to disavow the action of its president to the detriment of an employee who relied upon the president's apparent authority where the corporation had allowed the president to assume complete control of its affairs.

Here, the situation differs in that Bruce, the employee, cannot be said to be an unsuspecting employee who is attempting to enforce an extraordinary contract on the basis of his reliance upon the president's authority to bind the corporation. The undisputed evidence showed, rather, that Bruce was well aware of Alfred's status as 50% shareholder and director and, moreover, that Alfred expressly and repeatedly opposed the agreement. Thus, even assuming, *arguendo*, that the evidence established Eugene's "complete control" over the corporations as that term is used in *Jaffe*, the resulting *prima facie* power to bind the corporation to this unusual contract is plainly rebutted by the evidence.

We do not interpret *Jaffe* as creating an exception whereby once a president has assumed complete control over a corporation's affairs, his unauthorized actions can never be validly challenged by the corporation or by its board. We believe that a faithful application of the *Jaffe* exception, however, requires us to consider not only the extent of the president's unfettered control over the affairs of the corporation, but also the reasonableness of the contracting employee's reliance upon this *prima facie* authority, as well as the extent to which the evidence affirmatively shows that the contract was unauthorized. From our careful review of the undisputed evidence in this case, we

conclude that the *Jaffe* exception was improperly applied as the rule of law in this case, thus resulting in reversible error.

■ Next, with respect to L. Behrstock & Company and the Building Corp., the trial court concluded that the contract was binding upon these companies because plaintiff had accepted "the benefits of Bruce Behrstock's efforts." The trial court further found that plaintiff impliedly "ratified the entire contract by his conduct in acquiescing to Bruce Behrstock's management and control of the five companies." Plaintiff argues that the ruling is reversible error since there can be no implied ratification where plaintiff expressly rejected the agreement both prior to and after its execution; where Bruce knew of the repudiation and the lack of authority of Eugene to contract for the companies; and where Bruce's duties did not considerably change after the execution of the agreement. We agree that the requisites for implied ratification are not established on this record.

■ Ratification will not be inferred "where there is no act on the part of the corporation to show an intention, either express or implied, to ratify, but where, on the contrary, it seeks to repudiate the unauthorized act as soon as it has knowledge of it." (2A W. Fletcher, Cyclopedia of the Law of Private Corporations, sec. 752 (rev. perm. ed. 1982).) Here, it is clear that plaintiff's expressions before and after the contract exhibit no intent to ratify, but, on the contrary, constitute an unequivocal repudiation of the employment contract. Another requisite which must exist before the doctrine of implied ratification may apply is detrimental reliance by a third party (see generally *Harris Trust & Savings Bank v. Joanna-Western Mills Co.* (1977), 53 Ill. App. 3d 542, 368 N.E.2d 629); and it must be shown that the third party has been misled, or induced to forego advantage he would have otherwise enjoyed. (*Harris Trust & Savings Bank.*) There is no evidence here to show detrimental reliance on the part of Bruce. He had been managing the companies since 1973, and his duties remained essentially unchanged by the instant contract. He entered into this contract with full knowledge that it was unauthorized and contrary to Alfred's expressed rejection as a director of the board. Accordingly, the trial court's finding of implied ratification is contrary to the manifest weight of the evidence and, therefore, cannot stand.

Finally, plaintiff challenges the trial court's finding that Eugene exercised complete control over the Ace Companies. In view of our holding that the *Jaffe* "complete control" exception was improperly applied in this case, we need not fully address this issue. We note, however, that no concrete definition of "complete control" is to be

found in that opinion. The general factors considered relevant in establishing "complete control" in that case included: (1) the extent to which the officer exercised control over the corporate stock; (2) the extent to which the officer acted on behalf of the corporation; and (3) the extent to which the board of directors acquiesced in his actions. Applying those factors here, the evidence shows that at the time of the instant contract, Eugene controlled no more than 50% of the stock of the five companies; that since 1975 Bruce managed and controlled the day-to-day affairs of the Ace Companies; that Eugene was retired and living in Florida; that annual board meetings were held; that Alfred had not relinquished control of the two remaining companies; and that Alfred, as director, had clearly countermanded the authority of Eugene to bind the corporations to the instant contract. Thus, it appears that under the above factors considered relevant in *Jaffe*, Eugene exercised less than "complete control" of the Ace Companies at the time this extraordinary contract was executed.

For the foregoing reasons, the judgment declaring the written contract valid and enforceable is reversed, and the cause remanded for entry of judgment declaring the written contract null and void, and for any further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

WILSON, P.J., and LORENZ, J., concur.