ALFRED BEHRSTOCK, Plaintiff-Appellee, v. ACE HOSE AND RUBBER COMPANY *et al.,* Defendants-Appellants.

First District (5th Division)   No. 85—2678

Opinion filed July 3, 1986.—Modified on denial of rehearing August 15, 1986.

Carl B. Sussman, Paul J. Sussman, and Steven Samson, all of Sussman & Samson, of Chicago, for appellants.

Thomas F. Ging, Steven A. Weiss, and Mindy S. Trossman, all of Reuben & Proctor, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

This cause is before us a second time following our reversal of the judgment of the circuit court of Cook County upholding the validity and enforceability of an employment contract between defendant Bruce Behrstock (Bruce) and five closely held corporations, defendants Ace Hose and Rubber Company, Ace-Lite Step Company, Ace Stretch Hose Company (the Ace companies), L. Behrstock and Company and 1708 South State Street Building Corporation (the Building Corporation). Defendant Eugene Behrstock (Eugene), Bruce's father, had executed the contract over the objection of his brother, plaintiff Alfred Behrstock (Alfred); both Eugene and Alfred were 50% owners, officers and directors of the companies. We remanded to the trial court with directions that it enter judgment "declaring the written contract null and void" and to conduct further proceedings not inconsistent with our opinion. *Behrstock v. Ace Hose & Rubber Co.* (1983), 114 Ill. App. 3d 1070, 449 N.E.2d 954.

Upon remand and after consideration of Alfred's petition for an accounting and other relief, and Bruce's and Eugene's response thereto, the court ordered Bruce to repay to the companies certain monies, which it deemed were made to Bruce pursuant to the employment contract, and profits received from his rental of cars to the Ace companies through his operation of A & B Leasing. The court also ordered Bruce and Eugene to repay attorney fees paid on their behalf by the Ace companies. On appeal, Bruce and Eugene now contend that the trial court erred in ordering repayment of these sums and in allowing portions of their discovery depositions to be admitted into evidence. For the reasons set forth below, we affirm.

The record discloses that Alfred is president of the Building Corporation and L. Behrstock and Company, as well as secretary-treasurer of each of the Ace companies. Eugene is the president of the Ace companies and secretary of the other two companies. Bruce was neither a director nor an officer of the companies. In 1970, Eugene employed Bruce as a comptroller and, in 1972, he began transferring his stock to Bruce. By 1973 Bruce had become assistant to the president and general manager of the Ace companies, which sell industrial rubber products. The Ace companies and L. Behrstock and Company are located in the buildings owned and operated by the Building Corporation. In 1975, Eugene retired from the companies, but continued to consult with Bruce, who by that time had assumed Eugene's man-

agerial duties. Bruce was paid approximately $700 per week during the period preceding August 1978; however, no written employment contract had been entered into between the parties.

By 1978, Bruce was managing all five companies. In June and September or October, Eugene proposed to Alfred that they enter into an employment contract with Bruce. Alfred rejected these proposals on both occasions. On December 16, 1978, Bruce sent Alfred a copy of an employment contract entered into between Eugene and himself. Eugene had executed the contract on behalf of all five companies, signing it as president of the Ace companies and as vice-president of L. Behrstock and Company and the Building Corporation.

On February 16, 1979, Alfred filed suit, naming the companies and Bruce and Eugene as defendants. On appeal to this court for the first time, we held the contract was null and void and remanded the cause to the trial court. Thereafter, pursuant to the trial court's request, the parties entered into a stipulation, which stated, among other things: that prior to August 1978 Bruce received a salary of, at most, $700 per week from the Ace companies; that Bruce received a bonus of $30,500 for the fiscal year ending July 31, 1979, and a bonus of $28,000 for the fiscal year ending July 31, 1981, pursuant to the employment contract; and that Bruce's and Eugene's attorney fees were paid by the Ace companies in reliance on a letter from attorney Leonard Gordon to attorney Irving Ribstein and on article XIII of the corporate bylaws. The stipulation also indicated that the boards of directors of the Ace companies never made a determination to indemnify Eugene or Bruce for legal fees, no independent legal counsel ever issued a legal opinion that Eugene or Bruce should be indemnified by the Ace companies, nor was there ever a vote by disinterested shareholders of the Ace companies to indemnify them.

The trial court subsequently entered judgment ordering Bruce to repay to the companies $105,900, representing excess salary payments; $58,000, representing excess bonus payments; and $10,463, representing excessive profits received from his operation of A & B Leasing. The court further ordered that Bruce and Eugene repay $21,335, representing attorney fees paid on their behalf by the companies. This second appeal followed.

## I

We first address Bruce's argument that the trial court erred in ordering him to repay excess salary payments to the companies. In its memorandum opinion, the trial court found, after considering documentary evidence, arguments of counsel and our opinion in *Behr-*

*stock v. Ace Hose & Rubber Co.* (1983), 114 Ill. App. 3d 1070, 449 N.E.2d 954, that prior to August 1, 1978, Bruce received a salary of $700 per week and, thereafter, $1,000 per week. The court found that Bruce's salary was "properly" $700 per week based on that fact that no evidence had been presented to challenge this finding. The court further found that, based on our decision in *Behrstock,* Eugene lacked authority to raise Bruce's salary over the objection of Alfred and, accordingly, it ordered Bruce to return excess salary payments of $300 per week from August 1, 1978, to May 15, 1985, or $105,900.

Bruce now argues that his salary increase "was independent from the written contract" based on Eugene's implied authority to increase his salary, that the trial court should have allowed evidence of *quantum meruit* and that Alfred is estopped from disputing the raise. With respect to Bruce's first contention, he asserts that "[t]he simple undisputed facts" are that his salary was raised to $1,000 several months before the written contract was executed, pursuant to Eugene's implied authority to increase it, and that the written contract "adopted the $1,000 figure which had been paid for several months prior to the written contract."

We find it difficult to conceive how Bruce can argue that one 50% owner and director of a corporation had the *implied* authority to orally raise his salary over the repeated objections of another 50% owner and director when an appellate court has already ruled he did not have the *express* authority to do so pursuant to a written contract. There may be such authority based on the concept of human relations and family ties, but not when an appellate court has already ruled otherwise.

We also reject Bruce's argument that the trial court erred in refusing to allow *quantum meruit* evidence on this issue. Whether evidence is admissible rests primarily in the discretion of the trial court and its decision will not be disturbed absent an abuse of that discretion. (*Country Mutual Insurance Co. v. Adams* (1980), 85 Ill. App. 3d 501, 407 N.E.2d 103.) "A *quantum meruit* recovery requires a showing that a *** [party] has *voluntarily accepted a benefit* which would be inequitable for him to retain without payment since the law implies a promise to pay reasonable compensation when valuable *services are knowingly accepted.*" (Emphasis added.) (*Plastics & Equipment Sales Co. v. DeSoto, Inc.* (1980), 91 Ill. App. 3d 1011, 1017, 415 N.E.2d 492.) On remand of the instant case, the trial court had the following facts before it: prior to August 1978, Bruce earned $700 per week; by 1978 Bruce had assumed management of all five

defendant companies and continued to be paid $700 per week until August 1978; Bruce's duties did not change to any considerable extent after the employment agreement was executed in December 1978; Alfred repeatedly objected to any employment contract with Bruce or a raise in his salary; this court's decision found that the contract terms provided for a retroactive salary increase, and the contract, which we held invalid, although not executed until December 1978 was dated August 1, 1978. Based on these facts, Bruce could not successfully contend that Alfred voluntarily and knowingly accepted his services for the increased salary of $1,000 per week, since Alfred had expressly objected to the increase. Accordingly, we find that the trial court did not err in refusing *quantum meruit* evidence upon this issue, since it was inapplicable under the circumstances.

■ Finally, we note that defendants present their estoppel argument for the first time in this second appeal. With some exceptions not applicable here, it is well settled that no point which could have been raised on the merits in a prior proceeding can be urged in a subsequent appeal, and those points not raised are considered waived. (*People ex rel. White v. Busenhart* (1963), 29 Ill. 2d 156, 193 N.E.2d 850.) Since defendants here failed to raise their estoppel argument at trial or in their first appeal, they have waived it for purposes of review in this second appeal.

For the above reasons, therefore, we hold that the trial court did not err in ordering Bruce to repay excess salary payments.

## II

Defendants' next argument concerns the payment of two bonuses to Bruce in 1979 and 1981, $30,500 and $28,000, respectively. They contend the trial court erred in ordering Bruce to repay the bonuses to the companies because "[t]he Appellate Court decision did not prohibit Bruce from receiving bonuses" for those years, and Eugene had implied authority to authorize them. Defendants further assert *quantum meruit* and estoppel principles as a basis for Bruce's right to the bonuses, and also argue that the court erred in refusing to allow them to present evidence concerning Eugene's bonus compensation.

■ Under the law-of-the-case doctrine, "where evidence on a subsequent appeal is the same as on the first or prior appeal, *** the adjudications of such first or prior appeal are binding on the reviewing court on a subsequent appeal." (*Noe v. Chicago Great Western Ry. Co.* (1969), 130 Ill. App. 2d 36, 41, 263 N.E.2d 889.) In defendants' first appeal, we remanded the cause to the trial court with di-

rections that the court enter judgment declaring the employment contract null and void and to conduct further proceedings not inconsistent with this court's opinion. That became the law of this case, and it is binding upon us. *Moricoli v. P & S Management Co.* (1982), 104 Ill. App. 3d 234, 432 N.E.2d 903.

We further note that when a reviewing court enters a remanding order with instructions that are general in nature, the trial court upon remand is required to examine the court's opinion and determine what further proceedings will be consistent with that opinion, and it also may hear new evidence and dispose of the case accordingly. (*In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 474 N.E.2d 386.) However, when a reviewing court remands a case with specific directions, the trial court must follow those directions exactly. *John Burns Construction Co. v. Interlake, Inc.* (1984), 125 Ill. App. 3d 26, 465 N.E.2d 639.

In this case our instructions to the trial court were very specific, *i.e.*, to declare the employment contract null and void and to conduct further proceedings not inconsistent with our opinion. We find that the trial court complied with those instructions. As we indicated in point I of this opinion, where Eugene had no express authority to execute the employment contract raising Bruce's salary over the objection of Alfred, he clearly could not have had any implied authority either. The same principle applies with respect to the bonuses paid to Bruce; Eugene had no authority, over the objection of Alfred, to authorize payment of the bonuses to Bruce. Moreover, Bruce specifically stipulated that the bonuses were paid pursuant to the employment contract which this court determined to be null and void. In light of the foregoing, we therefore reject defendants' argument that Bruce is entitled to the 1979 and 1981 bonuses based upon the alleged implied authority of Eugene to set all bonuses.

We also reject Bruce's *quantum meruit* argument as to this issue because Alfred expressly objected to entering into an employment agreement which would entitle Bruce to any remuneration other than what he had been receiving and Bruce accepted the bonuses pursuant to the invalid employment agreement with knowledge of Alfred's objections. Bruce therefore would not be entitled to recovery under the *quantum meruit* principles previously discussed in point I of this opinion, and the trial court did not err in refusing *quantum meruit* evidence on this matter. Additionally, Bruce's estoppel argument concerning this issue must fail because it was not raised in the trial court or on appeal the first time before this court and, therefore, is considered waived. *People ex rel. White v. Bu-*

*senhart* (1963), 29 Ill. 2d 156, 193 N.E.2d 850.

Finally, we reject defendants' argument that the court improperly denied them the opportunity to present evidence of Eugene's bonus compensation. The determination of whether evidence is admissible rests primarily in the discretion of the trial court and its decision will be reversed only where that discretion has been clearly abused. (*Country Mutual Insurance Co. v. Adams* (1980), 85 Ill. App. 3d 501, 407 N.E.2d 103.) Based on the record before us, we find that the trial court did not abuse its discretion in refusing to admit evidence of Eugene's bonus compensation based on its determination that such evidence was unrelated to Bruce's repayment of the bonuses made to him.

### III

Defendants further argue that the trial court erred in ordering them to repay attorney fees in the amount of $21,335, paid on their behalf by the Ace companies. Specifically, they contend that pursuant to section 8.75 of the Business Corporation Act of 1983 (the Act) (Ill. Rev. Stat. 1985, ch. 32, par. 8.75), which they cite here for the first time, the bylaws of the Ace companies and the common law, they are entitled to be indemnified for their attorney fees in connection with the litigation of this matter. We disagree.

Section 8.75 of the Act and article XIII of the Ace companies' bylaws authorize indemnification for litigation expenses by the corporation for its officers or agents who are made parties to a suit by virtue of their connection with the corporation. Under both the Act and the Ace companies' bylaws, however, a determination to indemnify must be made either by a majority of the vote of disinterested directors or by independent legal counsel in a written opinion or by disinterested shareholders. Here, pursuant to Bruce's and Eugene's stipulation, no such determination was ever made by any of these required methods.

We further observe that, pursuant to the common law of Illinois, indemnification of an officer or agent by a corporation is contingent upon whether the officer or agent acted in good faith. (*Johnston v. Suckow* (1977), 55 Ill. App. 3d 277, 370 N.E.2d 650.) In its consideration of this issue upon remand, the trial court stated:

> "Given the proofs in this matter it cannot be said that Eugene acted either in good faith or in the best interests of the corporations. Over the objections of a fifty-percent owner, director and officer of the corporations, Eugene bound the companies to the Employment Agreement with Bruce. Eugene knew this

Agreement was unauthorized. In fact, Eugene and Bruce managed to keep the Agreement secret for some two months. This conduct does not support a finding of good faith on the part of Eugene or Bruce."

A trial court's findings of fact will not be disregarded unless they are against the manifest weight of the evidence. The fact finder, who observes witnesses testify, has a superior ability to assess their believability than a reviewing court which is limited to reading a transcript. (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723.) Based on the record before us and the fact that the trial court had numerous occasions to weigh that parties' credibility during the seven years this litigation has continued, we find no reason to disturb the court's finding that Bruce and Eugene did not act in good faith.

Accordingly, we conclude that the trial court properly ordered the return of attorney fees by defendants paid on their behalf by the Ace companies.

## IV

██ Bruce also argues that the trial court erred in ordering him to return excess profits received from his operation of a car leasing business. Bruce stipulated that he set up a sole proprietorship under A & B Leasing; that in 1978 he purchased a 1978 Mercury and in 1982 a 1982 Subaru, both for less than $10,000 each; that in February 1982 Bruce, through A & B Leasing, began leasing the Mercury to the Ace companies for $613.59 per month and the Subaru for $330.61 per month; and that the Mercury's $613.59 monthly rental was the same amount Bruce paid for a Datsun which he purchased for his own use in 1982. The stipulation also included questions and answers from a discovery deposition in which Bruce admitted $613.59 a month was arrived at arbitrarily, that it was not a reasonable rental fee for the 1978 Mercury and that "something less" than that amount would be a reasonable amount, "[m]aybe half."

Based on Bruce's stipulation and the absence of other definitive evidence, the trial court placed a monthly rental value of $330.61 on the use of the 1978 Mercury. The amount was the same that was being paid for the rental of the 1982 Subaru and approximately $24 more than the one-half amount suggested by Bruce in his stipulation. Accordingly, the court ordered Bruce to repay $10,463, representing the profits received from the rental of the Mercury at the rate of $613.59 from February 1982 to the date of its ruling.

Notwithstanding his stipulated statement, Bruce now contends that the trial court's valuation is an arbitrary figure. He further asserts that he only received 15 rental payments from the Ace companies, rather than 37 payments which he argues the trial court "assumed" he had been paid during the leasing period. On the other hand, plaintiff suggests in his appellate brief that Bruce's testimony on January 21, 1985, that he was "still" leasing the 1978 Mercury to the Ace companies at the same rate, indicated he had received 37 payments.

■■ On appeal, it is well settled that all reasonable presumptions are in favor of the action of the trial court and that the burden is on the appellant to show affirmatively the errors assigned on review; he has the burden of overcoming the presumption that the trial court's judgment was correct. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 458 N.E.2d 637.) Here, defendant has failed to cite to any evidence in the record in support of arbitrariness by the trial court in its determination of the proper rental fee for the Mercury or in support of his assertion concerning the number of rental payments received by him. Nor does our review of the record reveal any such evidence. Defendant therefore has failed to sustain his burden of proof to support his claim of error. Accordingly, we find no reason to disturb the trial court's judgment as to this issue.

## V

■■ Defendants' final argument concerns admission of portions of their discovery depositions into evidence. Defendants argue that pursuant to Supreme Court Rule 212(b) (87 Ill. 2d R. 212(b)), a deponent must be unavailable as a witness before an *evidence* deposition can be admitted into evidence and that this rule applies to *discovery* depositions. Plaintiff argues that Supreme Court Rule 212(a) (87 Ill. 2d R. 212(a)), solely governs admission of discovery depositions and, in the instant case, specifically subparagraph (2). Rule 212(a)(2) (87 Ill. 2d R. 212(a)(2)) provides that discovery depositions may be used "as an admission made by a party or by an officer or agent of a party in the same manner and to the same extent as any other admission made by that person."

We agree with plaintiff. Rules 212(a)(2) and 212(b) are unambiguous; Rule 212(a)(2) specifically pertains to discovery depositions, whereas Rule 212(b) pertains to evidence depositions. Rule 212(a)(2) does not require that a witness be unavailable to testify before a discovery deposition may be introduced into evidence—Rule 212(b) provides for this eventuality where an evidence deposition is sought to

be introduced. That the "unavailability" provisions of Rule 212(b) are not applicable to Rule 212(a)(2) is supported further by that rule's legislative history which indicates that in 1965 a proposal by the Illinois Supreme Court Rules Committee was rejected which would have permitted the use of discovery depositions only when the deponent is dead or otherwise unavailable to testify. Ill. Ann. Stat., ch. 110A, par. 212(a), Historical and Practice Notes (Smith-Hurd 1985).

We further observe that not only do defendants incorrectly assert that the unavailability provisions of Rule 212(b) apply to admission of discovery depositions into evidence, but they also misstate the effect of that rule were it to be applied to Rule 212(a)(2). Specifically, defendants state that the court erred "in allowing as evidence passages of Defendants' discovery deposition testimony when the Defendants were in court and could have testified." As this court stated in *Security Savings & Loan Association v. Commissioner of Savings & Loan Associations* (1979), 77 Ill. App. 3d 606, 396 N.E.2d 320, it is not necessary when seeking introduction of a discovery deposition into evidence that the person making an admission be unavailable as a witness, nor does his presence in court make any difference with respect to a statement's admissibility.

Here, the portions of Bruce's and Eugene's depositions which were admitted into evidence were from their discovery depositions. Accordingly, we hold that the trial court did not err in admitting portions of the depositions into evidence.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and PINCHAM, JJ., concur.