CHARLOTTE M. SEPESY, Indiv. and as Adm'r of the Estate of Joseph Andrew Sepesy, Deceased, Plaintiff-Appellant, *v.* HUGH FULLER *et al.*, Defendants.— (ARCHER DANIELS COMPANY, Defendant-Appellee.)

Fourth District   No. 14182

Opinion filed April 21, 1978.—Rehearing denied May 31, 1978.

Barry Chafetz, of Delano Law Offices, P. C., of Springfield, for appellant.

Samuels, Miller, Schroeder, Jackson and Sly, of Decatur (Carl R. Miller, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This case involved an accident that occurred on December 18, 1972, in which Joseph Andrew Sepesy died as the result of injuries inflicted. The incident took place at the West Plant of the defendant, Archer Daniels Company, in Decatur, Illinois. The evidence suggested that Joseph Andrew Sepesy, the deceased husband of the plaintiff, Charlotte M. Sepesy, was crushed between the front of the truck he had been driving and the rear of a semi-tractor trailer which rolled backward as the driver shifted gears in starting up the slight incline to the grain dump at the West Plant of the defendant, Archer Daniels Company. The trial court directed a verdict in favor of the defendant, Archer Daniels Company, after the presentation of plaintiff's evidence. Defendants Fuller, and Murphy, d/b/a Murphy Trucking Company, were dismissed by plaintiff during the presentation of plaintiff's evidence. Defendant Lane Cooperative Grain Company was dismissed by stipulation between plaintiff and Lane prior to trial. This appeal does not concern any of those defendants.

Plaintiff has raised several issues in her brief which she phrases as follows:

I. Whether the trial court erred in directing a verdict in favor of the defendant and against the plaintiff?

A. Whether the plaintiff's decedent was a business invitee?

B. Whether there was a duty on the part of the defendant to properly construct and maintain the ramp and road leading to the ramp?

C. Whether the defendant breached its duty to the plaintiff's decedent?

D. Whether the defendant's negligence was a proximate cause of the decedent's death?

E. Whether the ramp was an inherently dangerous instrumentality?

F. Whether the trial court applied the proper test in directing a verdict in favor of the defendant?

II. Whether the trial court erred in refusing to allow the plaintiff to impeach the testimony of occurrence witnesses?

III. Whether the trial court erred in refusing to allow the plaintiff to introduce testimony regarding the condition of the scene of the occurrence on the day after the accident?

IV. Whether the trial court erred in refusing to allow testimony that it was a common occurrence for drivers to be out of their trucks while waiting in line?

V. Whether the trial court erred in refusing to allow testimony regarding Archer Daniels Company's deviations from safety standards?

VI. Whether the trial court erred in refusing to allow plaintiff to inquire about a document commented upon two times by the defendant on cross-examination?

VII. Whether the trial court erred in refusing to allow testimony concerning the practice of written contracts and plans in the construction of ramps?

VIII. Whether the trial court erred in refusing to allow testimony regarding safety devices employed at plants similar to the Archer Daniels Company?

We view the first issue raised as determinative of this appeal. The evidence produced at the trial leaves essentially undisputed that plaintiff's decedent was a business invitee legally upon the premises of the Archer Daniels Company at the time of the accident that resulted in his death. Mr. Sepesy was upon the premises delivering grain to the Archer Daniels Company's West Plant as an employee of Marshall Shutt. Generally an invitee has been defined as one who enters upon the premises of another in response to an express or implied invitation for the purpose of transacting business in which the parties are mutually interested. (*Augsburger v. Singer* (1968), 103 Ill. App. 2d 12, 242 N.E.2d 436; *Madrazo v. Michaels* (1971), 1 Ill. App. 3d 583, 274 N.E.2d 635.) The grain dump operated by the defendant, Archer Daniels Company, was clearly

for the purpose of having grain delivered to its plant and was for defendant's benefit as well as the owners and haulers of grain who regularly used defendant's facility.

■■■ It is generally stated that the owner or occupier of land owes to persons present on the premises as business invitees the duty of exercising ordinary and reasonable care to see that the premises are reasonably safe for use by the business invitees. The subject of an owner's liability to business invitees for injuries sustained in the use of ramps and inclined floor surfaces has been extensively annotated at Annot., 65 A.L.R.2d 420 (1959). From this source it can be concluded that it must be proved that a dangerous condition actually existed in relation to the ramp or incline.

The ultimate issues presented then is whether, applying the *Pedrick* standard to the facts of the case, the trial court erred in directing a verdict in favor of defendant. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The record discloses that the trial court determined that there was no evidence justifying the conclusion that there was a breach of duty by the defendant to the plaintiff's decedent. We must apply the same *Pedrick* standard in reviewing whether the trial court erroneously directed a verdict. (*Campbell v. Cowden* (1974), 18 Ill. App. 3d 500, 309 N.E.2d 601.) We must look at all the evidence in its aspect most favorable to the plaintiff and determine whether the evidence so overwhelmingly favors the defendant that no contrary verdict based on that evidence could ever stand.

■■■ Plaintiff introduced extensive evidence from its expert on the proper construction and maintenance of ramps and inclines pursuant to generally accepted standards involving parking garages, highways and governmental Corps of Engineers' projects. Although there was no evidence on standards for construction or maintenance of ramps leading to grain dumps specifically, we believe the other evidence offered by plaintiff should be applied by analogy to this case. Where the alleged dangerous condition stems from the original construction of the ramp, it is not necessary to prove that the defendant had notice of the condition. Ample evidence was introduced that it was a natural and foreseeable consequence that semi-tractor trailers, which were often longer than the ramp, would roll backwards when gears were shifted to proceed up the ramp to the grain dump. It was also a common occurrence for the trucks to line up one after the other in line to proceed up the ramp, and for the truck drivers to leave their trucks while so waiting in line. With this evidence before the court and jury, we believe the question of whether defendant was negligent in failing to provide traction or stop block devices on the ramp, or in failing to direct or provide spacing, or directions or signs prohibiting the drivers from leaving their driving positions, or milling around the area while they waited, was a fact

question for the jury. The factual nature of this issue of whether defendant breached the duty he owed to business invitees, such as plaintiff's decedent, is accentuated by the added condition that it was wet and slushy on the day the accident happened.

As we have heretofore indicated, the duty owed to the plaintiff's decedent, a business invitee in this case, is one of ordinary and reasonable care. That standard is a variable one and usually creates a fact question for the jury. The issue of whether the standard of care required in a given case has been exercised is ordinarily one for the jury. (*Madrazo; cf. Okai v. United Roofing & Siding Co.* (1960), 24 Ill. App. 2d 243, 164 N.E.2d 237.) In the present case reasonable men could draw conflicting inferences from the evidence and it would appear the issue of defendant's negligence should have been presented to the trier of fact.

In *Stroyeck v. A. E. Staley Manufacturing Co.* (1960), 26 Ill. App. 2d 76, 167 N.E.2d 689, the court held that the construction of a sidewalk, although constructed within the maximum grade level allowed by the relevant engineering and safety standards, still left a jury question as to the defendant's negligent construction and maintenance of the sidewalk while knowing of obvious seasonal traction difficulties. The *Stroyeck* decision is applicable to the instant case, particularly where the trucks rolling backward in starting up the ramp is a readily foreseeable occurrence with the added usual condition of truck drivers milling around waiting with their trucks in line. We conclude that the evidence when viewed in its aspect most favorable to the plaintiff did not so overwhelmingly favor the defendant that no contrary verdict based thereon could ever stand. The trial court accordingly erred in directing a verdict in favor of defendant at the close of plaintiff's case.

Because the case must be reversed and remanded for a new trial so that the issue of defendant's negligence can properly be submitted to the jury, we will discuss only briefly the other issues raised by plaintiff.

■■ The plaintiff argues that the trial court erred in refusing to allow her to impeach the testimony of several of defendant's employees who were called by her as witnesses. Plaintiff contends that the witnesses were hostile and subject to being examined in a manner similar to cross-examination. All these witnesses were present at the scene of the accident but were not eyewitnesses. Since these witnesses could not testify to the actual facts of the occurrence of the accident, the importance of their testimony was undermined. We believe plaintiff's failure to make an offer of proof as to the basis of her impeachment of these witnesses precludes us from reviewing the trial court's determination now.

■■ Plaintiff also claims that evidence of the condition of the accident scene the day following the occurrence with trucks rolling backward a few inches on the ramp should have been admitted into evidence. To be

admissible the evidence must be very close in time to the accident and must be consistent with the conditions on the date of the accident. (*La Salle National Bank v. Feldman* (1966), 78 Ill. App. 2d 363, 223 N.E.2d 180.) We agree with the trial court that the evidence on the day following the accident was not sufficiently consistent with the conditions on the day of the accident particularly where the evidence showed the trucks rolling backward on the ramp only a few inches, and therefore, that the trial court did not abuse its discretion.

We agree with the defendant's argument that the plaintiff failed to include issues numbered IV, VI, and VII in her post-trial motion and cannot now raise these issues on appeal. *Danielson v. Elgin Salvage & Supply Co.* (1972), 4 Ill. App. 3d 445, 280 N.E.2d 778.

■■ As the fifth issue plaintiff claims error occurred when the trial court refused to allow testimony regarding the defendant's deviations from safety standards. The record discloses that the trial judge allowed a wide latitude in the testimony of plaintiff's expert in this area. We believe no error occurred because the trial judge correctly limited plaintiff's evidence of safety standards for ramp construction and maintenance to measuring whether the defendant breached a common law duty owed to plaintiff's decedent. Plaintiff's final argument is that the trial court erred in refusing to allow testimony regarding safety devices employed at plants similar to defendant's. The record, however, discloses that plaintiff's investigative witness, Charles Neuf, was never asked what the results of his investigation were. It is clear then that the trial court did not refuse to allow his testimony and we conclude that no error occurred.

For the reasons stated, the judgment of the circuit court of Macon County in favor of the defendant, Archer Daniels Company, is reversed and the cause remanded for a new trial consistent with the views expressed in this opinion.

Reversed and remanded.

ALLOY, P. J., and STOUDER, J., concur.