LINDA L. SIMMONS *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. ALDI-BRENNER COMPANY, Defendant-Appellant (Iola Mitchell *et al.*, Defendants and Cross-Appellees).

Third District No. 3—86—0649

Opinion filed October 30, 1987.—Rehearing denied December 3, 1987.

Rex K. Linder and Daniel L. Schmidt, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Aplington, Kaufman, McClintock, Steele & Barry, of La Salle, for appellees Linda L. Simmons, Eugene A. Simmons, Nancy Born, and Judith K. Kurtz.

T. Donald Henson and Robert M. Hansen, both of Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle, for other appellees.

JUSTICE LUND delivered the opinion of the court:

A verdict was entered in the amount of $89,500 in favor of Linda L. Simmons, Eugene A. Simmons, Nancy Born, and Judith A. Kurtz (plaintiffs) against Aldi-Brenner Company (Aldi), an Illinois corporation, by a jury in a personal injury action in the circuit court of La Salle County. The same jury returned verdicts against plaintiffs and in favor of defendants Iola Mitchell, Anthony C. Raccuglia, Mary Kaszynski, and the estate of Benjamin M. Kaszynski (Kaszynski estate). Judgment was entered on the verdicts. Aldi appeals from the judgment against it, and plaintiffs cross-appeal from the judgment against them.

On August 18, 1981, defendant Iola Mitchell's car crashed through the front glass wall of the Aldi store in Peru, Illinois. Plaintiffs Linda Simmons, Nancy Born, and Judith Kurtz, all patrons of the store, were injured. In addition, the mother of Linda Simmons and Nancy Born, who are sisters, was killed.

Plaintiffs filed a personal injury action alleging negligence against the driver of the automobile, Mitchell, the lessee-occupier of the premises, Aldi, and the lessor-owners of the premises, Anthony Raccuglia, Mary Kaszynski, and Benjamin Kaszynski. During the pendency of the suit, Benjamin Kaszynski passed away. His estate was substituted as a party defendant. Plaintiffs Linda Simmons, Nancy Born, and Judith Kurtz asked for compensation from each of the defendants for the injuries they had suffered. Linda Simmons and Nancy Born also asked for compensation for negligent infliction of emotional distress, having watched their mother die. Eugene Simmons, Linda's husband, asked for compensation for loss of consortium.

The Aldi store in Peru is on Shooting Park Road, an east-west street, and is on the north side of the road. The store had an all-glass front wall with aluminum framing. Directly in front of the glass wall was a sidewalk five feet wide. The curb was four to six inches high along the sidewalk. Parking stalls were immediately perpendicular to the sidewalk, meaning that cars were "invited" to park facing the glass front wall. After making the turn into Aldi's parking lot, Mitchell's car continued through the parking lot, a distance of roughly 65½ feet, up over the sidewalk curb, and through the glass wall of the store. It completely entered the Aldi store, ending up some 20 to 25 feet inside the store. The investigating officer concluded that Mitchell applied no brakes before entering the store. One braking skid mark

was found on the sidewalk and three more were found inside the store. The officer gave the car a brief inspection after the accident and found no mechanical defects.

Iola Mitchell, the driver of the car, testified that she was going west on Shooting Park Road prior to the accident. She made a right turn into the Aldi parking lot, and as she made the turn, she "blacked out." She remembered nothing else until regaining consciousness after the accident. She further stated she was driving 12 to 15 miles per hour when she went into her turn. An occurrence witness testified that the Mitchell car entered a parking space slowly, then accelerated, going up onto the sidewalk and into the store.

Dr. Won Kim, a specialist in internal medicine who had treated Mitchell in the past, gave his diagnosis that Mitchell suffered an episode of syncope. This episode of syncope was brought on suddenly by a third-degree atrioventricular block in her heart.

A photo exhibit indicates that the front of the store faces south toward Shooting Park Road, with a door at the southeast corner of the store. Eight parking places are in front of the store, perpendicular to the sidewalk. The parking lot is separated from Shooting Park Road by a grassy boulevard with a raised curb along the road. At least two parking places are provided next to and parallel to the boulevard. There are two entrance and exit drives, one on the east side in front of the store and one on the west side beyond the store's western edge. The grassy boulevard lies between the two entrances.

Aldi contends it violated no duty in relation to the construction of the store and further contends that the construction of the store was not the proximate cause of plaintiffs' injuries.

Common law negligence consists of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307, 308; *Alm v. Van Nostrand Reinhold Co.* (1985), 134 Ill. App. 3d 716, 718, 480 N.E.2d 1263, 1265.) The existence of a duty, that is, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538, 540; *Alm v. Van Nostrand Reinhold Co.* (1985), 134 Ill. App. 3d 716, 718, 480 N.E.2d 1263, 1265.) "In determining whether the law imposes a duty, foreseeability of possible harm alone is not the test, for in retrospect almost every occurrence may appear to be foreseeable. The likelihood of injury from the existence of a condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant must be taken

into account. [Citation.]" *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29, 305 N.E.2d 535, 539; see also *Alm v. Van Nostrand Reinhold Co.* (1985), 134 Ill. App. 3d 716, 718, 480 N.E.2d 1263, 1265.

A business invitee is one who enters upon the premises of another in response to an express or implied invitation for the purpose of transacting business in which the parties are mutually interested. (*Sepesy v. Fuller* (1978), 59 Ill. App. 3d 56, 58, 375 N.E.2d 180, 182; *Augsburger v. Singer* (1968), 103 Ill. App. 2d 12, 15, 242 N.E.2d 436, 438.) The owner or occupier of land owes to persons present on the premises as business invitees the duty of exercising ordinary and reasonable care to see that the premises are reasonably safe for use by the business invitees. (*Sepesy v. Fuller* (1978), 59 Ill. App. 3d 56, 58, 375 N.E.2d 180, 182.) However, a storekeeper is not the insurer of his customers' safety. Liability must be founded on fault. (*Olinger v. The Great Atlantic & Pacific Tea Co.* (1961), 21 Ill. 2d 469, 476, 173 N.E.2d 443, 446.) The issue of whether the standard of care in a given case has been exercised is ordinarily one for the jury. (*Sepesy v. Fuller* (1978), 59 Ill. App. 3d 56, 60, 375 N.E.2d 180, 183.) If reasonable men could draw conflicting inferences from the evidence, the issue of defendant's negligence should be presented to the trier of fact. 59 Ill. App. 3d 56, 60, 375 N.E.2d 180, 183.

We see no need for a long dissertation as to the law relating to "proximate cause." The law, as it would apply to the case at bar, is adequately set forth in *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 333-34, 369 N.E.2d 1284, 1292, *aff'd in part & rev'd in part* (1979), 76 Ill. 2d 154, 390 N.E.2d 859, and in *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 316-18, 45 N.E.2d 665, 675.

In applying these principles of proximate cause to the present case, we note the following. If a duty existed on the part of Aldi to alter the front of the store in order to give added protection against vehicles coming through the front, the jury would, nevertheless, have been required to determine whether the Mitchell car would have penetrated the store regardless of the store's compliance with the duty. If the particular operation of the Mitchell auto could not be reasonably anticipated, the violation of the construction duty would not be the proximate cause of the injury. *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 317, 45 N.E.2d 665, 675.

We must first decide, then, whether a duty existed as a matter of law. In reaching a determination, we consider the testimony of both plaintiffs' and Aldi's experts.

James Peterson, an architect and structural engineer, testified for plaintiffs regarding the construction of the building. He examined the

building and the parking lot. He gave his opinion about the safety factors in the design of the store and parking lot. He expressed concern about the all-glass front wall of the store. He based this concern on his experience with the standards used by the construction departments of other "chain type food and drug establishments." He testified a low, bulkhead wall is usually required by the larger food company chains in their stores. Peterson also found the parking lot and sidewalk to be a concern. The sidewalk was relatively narrow for pedestrian passage. The parking lot sloped upward causing, according to Peterson, drivers to accelerate before coming to a stop at the curb. There were no parking bumpers with which to provide additional restraint in stopping or slowing down cars which attempted to park in the parking slots directly in front of the store.

On cross-examination, Peterson stated that the city of Peru had adopted the Building Officials and Code Administrators International (BOCA) Code as its building code. He acknowledged there was no violation of that code in the construction of the Aldi store. Nevertheless, it was Peterson's opinion that the parking stalls should not be perpendicular to the front wall and that the design of the building was unreasonably dangerous.

Peterson admitted that it would be speculation to say that if any of the safety features he discussed had been present, they would have prevented Mitchell's car from entering the store. Whether Mitchell's car would have entered the store depended on a multitude of factors. However, Peterson stated the building would have been safer.

Aldi's expert was Wayne Nowlan, an architect, who gave his opinion that there was nothing wrong with the parking area or the building. He based his opinion on the fact that Peru had adopted the BOCA Code, and there were no violations of the Code at the Aldi store. He further testified that the layout met reasonable architectural standards. On cross-examination, he stated he would not necessarily recommend a low, bulkhead wall instead of an all-glass front wall because of the cost.

Plaintiffs argue that Aldi had a duty to protect customers against runaway cars. Plaintiffs assert that it was reasonably foreseeable from the layout of the Aldi store and parking lot that an out-of-control car could enter the store causing injury. They cite *Ray v. Cock Robin, Inc.* (1974), 57 Ill. 2d 19, 310 N.E.2d 9, and *Marquardt v. Cernocky* (1958), 18 Ill. App. 2d 135, 151 N.E.2d 109, as authority for their position.

In *Ray*, defendants operated an ice cream stand which had a picnic area near the adjoining street. A police officer would have testi-

fied, but was prevented from doing so at the trial, of a prior accident where an auto had run into the picnic area. A warning had been given to an employee of the defendants'. The supreme court held that the testimony of the police officer created a factual question as to whether the accident was foreseeable. The present case is distinguishable in that there was no evidence of a prior accident, and the store was farther back from the traffic pattern.

*Marquardt* involved a private park area where autos were parked on a hill sloping sharply towards a picnic area. A child disengaged a parking gear, which resulted in a car rolling into an area crowded with picnickers. It was held that a jury could find that the owners of the park should have reasonably foreseen the resulting injuries as a natural and probable consequence of their failure to construct safety barriers for the picnic area. By contrast, the parking area in front of the Aldi store gradually sloped away from the storefront.

As previously indicated, foreseeability is not the only test of the existence of a legally recognized duty. When considering all the factors present in this case, we come to the conclusion that a duty did not legally exist requiring Aldi to protect against the injury caused by the Mitchell automobile. As plaintiffs' expert stated, it would be mere speculation to say that his recommended safety features would have prevented the entry of the car.

■■ This case does not involve a vehicle rolling into the storefront. It involves a driver losing consciousness and accelerating into the building without evidence of immediate braking. It would amount to mere speculation to determine what would have stopped the vehicle in the absence of extensive engineering studies and testing. Even if there had been a frame or concrete-block partial wall, the entry could have taken place. If parking in front of the store had not been allowed, the unconscious driver may still have driven through the store's front wall. Under the facts present in this case, we find that placing a duty on Aldi to protect against this type of accident is an unreasonable burden. While one could contend that everything is foreseeable, we hold foreseeability as a matter of law was not present in this case.

A contrary opinion would place a burden on every store, near a street or parking lot, of constructing barriers adequate to prevent any car from being driven into the building.

The judgment against Aldi must be reversed. Defendants Raccuglia, Kaszynski, and the Kaszynski estate were all made parties because of their ownership of the Aldi building. The reasoning for the ruling as to defendant Aldi also applies to the landlords. The cross-

appeal by plaintiffs as to those defendants must be denied.

On the cross-appeal, plaintiffs argue they should have been allowed to present evidence about Mitchell's prior complaints and episodes of vertigo and syncope in order to show she was on notice that she had a serious physical ailment which could affect her driving. Prior to trial, the lower court granted Mitchell's motion *in limine* to prevent mention of her prior or subsequent physical ailments unless a causal connection was established with the August 18, 1981, episode of syncope which precipitated the accident. The court. implied, and plaintiffs' counsel understood, that plaintiffs would probably need an expert medical witness to create the causal connection.

During cross-examination of Mitchell, counsel for plaintiffs requested that he be allowed to elicit testimony from Mitchell regarding prior episodes of vertigo or syncope. This request to make an offer of proof was denied. Prior to Mitchell's testimony, a discussion outside the presence of the jury was had between the court and the attorneys regarding this evidence. Counsel for plaintiffs indicated he would not call a medical expert to connect the evidence of prior complaints Mitchell had made to her physician. Rather, he wished to elicit evidence of previous complaints and symptoms from Mitchell, and connect this testimony with the August 18, 1981, incident through cross-examination of Dr. Won Kim, Mitchell's treating physician and expert witness.

Later in the trial, James Brown, a mechanic, testified for plaintiffs. He was a witness to the events occurring immediately after the accident. He had also previously worked on Mitchell's car. An offer of proof was made where Brown testified he saw Mitchell in her car at the auto shop some six months prior to the accident. At that time, she appeared to be passed out in her car. The court refused to admit the evidence.

Plaintiffs argue the exclusion of the above evidence was error and prejudicial to their case against Mitchell. They assert the evidence would have shown Mitchell was on notice of her physical condition such that it was negligent for her to drive. Plaintiffs contend the trial court's requirement of a medical expert's testimony was an extreme requirement and improper.

■ Evidence of prior occurrences is admissible to establish notice of a dangerous condition. (*Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 441, 396 N.E.2d 534, 537-38.) The prior occurrences need only be substantially similar to the accident in question; they need not be identical. (77 Ill. 2d 434, 441, 396 N.E.2d 534, 538.) "[T]he crucial factor to determine the relevancy and admissibility of

the rejected testimony concerning prior similar occurrences is whether those are reasonably similar." (*Grant v. Joseph J. Duffy Co.* (1974), 20 Ill. App. 3d 669, 678, 314 N.E.2d 478, 484-85.)

> "The rule is also clear that to render evidence of similar accidents resulting from the same cause competent, it must appear, or the evidence must reasonably tend to show, that the instrument or agency which caused the danger was in substantially the same condition at the time such other accidents occurred as at the time of the accident complained of. [Citation.] To make the proof of other independent accidents competent, the condition or thing shown to be the common cause of danger in such accidents must be the condition or thing contributing to the danger of the accident complained of." (*Moore v. Bloomington, Decatur & Champaign R.R. Co.* (1920), 295 Ill. 63, 67, 128 N.E. 721, 722-23.)

The question before this court is whether the requirement that plaintiffs causally connect any evidence they could present of prior occurrences through the testimony of a medical expert was unduly restrictive.

Defendant Mitchell responds by pointing to the uncontradicted testimony of Dr. Kim. Dr. Kim's diagnosis of the cause of Mitchell's episode of syncope on August 18, 1981, was that she suffered an atrioventricular (AV) block. Mitchell argues that, in order for the evidence to be relevant in this case, any evidence of prior occurrences of syncope must be linked to a prior occurrence of an AV block. Since prior episodes of syncope may be caused by various factors, Mitchell contends that evidence of a prior AV block was needed to establish that she was on notice that she could pass out from an AV block while driving. Mitchell cites *Eleopoulos v. Dzakovich* (1981), 94 Ill. App. 3d 595, 600, 418 N.E.2d 980, 985, for the proposition that it is not considered error to exclude testimony which, in the judgment of the trial court, does not reasonably bear upon the specific issue under consideration.

We agree that if the evidence of prior occurrences of vertigo and syncope were sufficiently similar to the nature of the episode which occurred on August 18, 1981, such evidence should have been submitted to the jury. On the other hand, if the testimony of Mitchell's medical expert as to the specific cause of the August 18, 1981, episode of syncope required more specific evidence from plaintiffs of a causal connection, this court should find in favor of defendant Mitchell.

The medical evidence relating to defendant Mitchell indicated she suffered from diabetes, hypertension (high blood pressure), and obe-

sity. She was taking medication for the diabetes and hypertension, and both were under control. In responding to the motion *in limine*, plaintiffs' counsel suggested the presence of episodes of vertigo prior to the date of the accident. Dr. Kim, during his cross-examination, stated that he was aware of these occurrences.

Dr. Kim described vertigo as "a sensation surrounding you with moving around or whirling around you." In contrast to the vertigo, there was no evidence suggested to the court of prior episodes of syncope or unconsciousness, except for the speculative statements of James Brown. Plaintiffs' counsel was allowed to cross-examine Dr. Kim about vertigo, but he did not attempt to elicit evidence of a connection between the vertigo and the AV block syncope. There is simply no indication in the record and no suggestion from plaintiffs' counsel of a clear connection between an AV block providing an episode of syncope and other episodes of vertigo.

Plaintiffs deposed Mitchell and Dr. Kim prior to trial and had the opportunity to investigate Mitchell's medical history. However, plaintiffs did not indicate there was any evidence of prior episodes of syncope. We find the mechanic's suggested testimony to be too speculative to justify admission. In light of the absence of such evidence, we find it was proper to require assurances of medical testimony linking the accident episode and prior vertigo episodes. The evidence, both admitted and offered, did not indicate the necessary similarity between the August 18, 1981, episode and prior episodes of vertigo. Dr. Kim's evidence required more medical expert testimony from plaintiffs. The trial court's rulings were correct.

In light of our rulings, we need not determine the other issues raised on appeal. Judgment against Aldi-Brenner Company, an Illinois corporation, is reversed. Judgments as to the other defendants, we affirm.

Affirmed in part and reversed in part.

SPITZ, P.J., and GREEN, J., concur.