DONNA STUTZ *et al.*, Plaintiffs-Appellants, v. PEARL A. KAMM *et al.*, Defendants-Appellees.—JOHN B. WARNES, Indiv. and as Ex'r of the Estate of Sandra S. Warnes, Deceased, Plaintiff-Appellant, v. CHAMPAIGN ASPHALT COMPANY *et al.*, Defendants-Appellees.

Fourth District   Nos. 4—90—0221, 4—90—0276 cons.

Opinion filed October 31, 1990.

Johnson, Frank, Frederick & Walsh, of Urbana, for appellants Donna Stutz and William Stutz.

Phebus, Tummelson, Bryan & Knox, of Urbana, for appellant John B. Warnes.

Thomas, Mamer & Haughey, of Champaign, for appellee First National Bank of Champaign.

Edward M. Wagner and Matthew A. Kirsh, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellee Champaign Asphalt Company.

JUSTICE SPITZ delivered the opinion of the court:

This consolidated appeal involves two separate actions resulting from an accident on August 26, 1988. The facts surrounding the accident are these. On August 26, 1988, Pearl Kamm, age 77, took a driver's license examination at the Illinois Secretary of State driver service facility in Tuscola, Illinois. Driver's license examiner Mary Jo Fitzjarrald was in Kamm's automobile as the testing began. Kamm backed her vehicle out of a parking space, located immediately east of the entrance to the facility and the waiting room, and drove it off the

rear edge of the parking lot. In response to driving off the rear edge of the lot, Kamm placed the car in forward, accelerated, and drove the vehicle into the driver service facility. The collision killed Sandra S. Warnes and seriously injured Donna Stutz, both of whom were in the waiting area of the facility.

In case No. 4—90—0276, plaintiff John Warnes brought suit, individually and as executor of the estate of Sandra S. Warnes, deceased, in the circuit court of Champaign County, Illinois, seeking to recover damages for the wrongful death of his wife, Sandra S. Warnes. Warnes' suit also included survival and loss of consortium counts. Warnes named as defendants Champaign Asphalt Company; the First National Bank in Champaign, as trustee under trust agreement dated January 12, 1988, and known as trust No. 1518; George R. Rouse and Joseph F. Lamb, beneficiaries of trust No. 1518; Mary Jo Fitzjarrald; and Jim Edgar as Secretary of State. Plaintiff Warnes settled with Kamm and her insurance company. The trial court dismissed Mary Jo Fitzjarrald and Jim Edgar as Secretary of State from the action.

In case No. 4—90—0221, plaintiffs Donna and William Stutz brought suit in the circuit court of Champaign County to recover damages resulting from the accident. Donna Stutz sought to recover for personal injuries sustained as a result of the accident, and William Stutz sought to recover for loss of consortium. In addition to the defendants named in plaintiff Warnes' complaint, the Stutzes named Pearl A. Kamm as a defendant, but did not name Jim Edgar, Secretary of State, as a defendant. The trial court dismissed Fitzjarrald from the Stutzes' action.

Plaintiffs in both cases raised the same question in their pleadings. The only difference in the plaintiffs' actions relates to the underlying cause of action and the type of damages claimed. The following appeal involves only defendants Champaign Asphalt (defendant contractor); and the First National Bank in Champaign, as trustee under trust agreement dated January 12, 1988, and known as trust No. 1518, and George R. Rouse and Joseph F. Lamb, beneficiaries of trust No. 1518 (defendant owners).

The plaintiffs' separate amended complaints alleged the following: (1) defendant contractor performed work on the parking lot of the driver services facility in question; (2) defendant contractor had a duty to perform work on the parking lot according to a lease, plans, and/or specifications in a workmanlike manner, or alternatively, that dangerous conditions resulting from following the lease, plans, and/or specifications were so obviously dangerous that no one would have performed them; (3) defendant contractor breached a duty to plain-

tiffs; and (4) this breach of duty was a direct and proximate cause of the damages sustained. The Stutzes' complaint also alleged that defendant contractor knew or should have known that drivers of questionable ability could cause danger to those in the building.

Plaintiffs further alleged defendant contractor negligently and carelessly (1) failed to provide bumpers or other stops to prevent automobiles from driving into the driver services facility; (2) failed to properly stripe the parking lot for parking; (3) constructed the parking lot at an improper elevation to the sidewalk edge so that the sidewalk edge would not act as a stop, thereby allowing automobiles to move forward into the driver services facility; (4) constructed the parking lot and striped the lot for improper traffic flow; (5) constructed the parking lot so as to allow for a drop-off along the easterly edge of the parking lot at the south end of the parking lot adjacent to the striped parking spaces; (6) constructed the parking lot in such a manner as to overlay pavement, which reduced the effectiveness of an asphalt bumper located at the easterly edge of the parking lot at the south end, adjacent to striped parking spaces; (7) allowed a drop-off to exist along the portion of the parking lot located adjacent to the space used by Kamm so when Kamm backed out of the space, her vehicle was allowed to back off the parking surface and become stuck; (8) improperly constructed rolled curbing located adjacent to the striped parking space used by Kamm; and (9) constructed the parking lot of insufficient width so as to provide inadequate backing space on the paved surface in the southwest area of the parking lot.

Plaintiffs' complaints against defendant owners alleged (1) defendant owners entered into a lease agreement with the Secretary of State; (2) the lease promised to provide a parking lot with certain improvements; (3) the owners had work done on the parking lot; (4) the owners knew or should have known that drivers of questionable ability could cause danger to those in the building; (5) the owners had a duty to persons on the premises to exercise ordinary care and maintain the parking lot in a reasonably safe condition; and (6) the owners breached this duty and as a proximate result the accident occurred.

In addition to the same nine alleged negligent acts or omissions of the contractor, plaintiffs further alleged that the owners negligently and carelessly (1) failed to properly maintain the parking lot in violation of the lease agreement, (2) had a parking lot of insufficient width so as to provide inadequate backing space on the paved surface in the southwest area of the parking lot, and (3) provided a waiting room in a location adjacent to a parking area when they knew or should have known that vehicles might enter the waiting room and strike persons therein.

Plaintiffs attached a copy of the lease between the defendant owners and the Secretary of State to their complaints. The lease between the owners and the Secretary of State called for the owners to provide certain parking lot improvements, including. (1) an asphalt or concrete parking lot with appropriate ingress-egress driveways and parking spaces, (2) parking blocks (stops), curbs, *et cetera,* and (3) striped parking places to accommodate 12 to 15 parking spaces.

Defendants filed separate motions to dismiss plaintiffs' amended complaints pursuant to section 2—619 of the Code of Civil Procedure as failing to state a claim upon which relief can be granted. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619.) Defendant contractor also filed a motion to dismiss pursuant to section 2—615 for failing to plead facts with specificity or sufficient factual allegations to assert that the resurfacing was obviously dangerous.

The trial court granted defendants' motions to dismiss and concluded:

"Insofar as foreseeability is an element of duty in the premises, foreseeability as inferred from the facts alleged in the amended complaint is too remote to give rise to a duty owed and breached. Public policy does not require a contrary view. Furthermore, the conduct or omission of these defendants is not a proximate cause of the damage claimed. The action as to said defendants is dismissed with prejudice ***."

The court found pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) no just reason for delaying enforcement of or appeal from its order, and plaintiffs filed a timely notice of appeal.

On appeal, plaintiffs argue that a duty existed on the part of defendants to prevent this type of occurrence, the court erred in determining proximate cause not to exist as a matter of law, and their claims were legally sufficient to state a duty and withstand defendants' motion to dismiss. We find no duty to exist in the instant case and affirm the trial court's dismissals.

■ On a motion to dismiss, all well-pleaded facts should be regarded as true and all reasonable inferences should be construed in plaintiff's favor. A complaint will not be dismissed unless it clearly appears from the pleadings that no set of facts can be proved which would entitle the plaintiff to recover. *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 82-83, 523 N.E.2d 594, 597.

■ ■ To be legally sufficient, a claim for negligence must allege facts that establish (1) the existence of a duty owed by defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach. (*Kirk v. Michael Reese Hospital & Medical Center*

(1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 395-96, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) Whether a duty exists is a matter of law for the trial court to determine in each particular case. (*Kirk*, 117 Ill. 2d at 525, 513 N.E.2d at 396.) Factors relevant in determining whether a duty exists are (1) foreseeability of the injury, (2) magnitude of the burden of guarding against the injury, and (3) desirability or consequence of placing the burden upon the defendant. *Kirk*, 117 Ill. 2d at 526, 513 N.E.2d at 396.

■ There exists on the part of a premises owner a duty to invitees of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 141, 554 N.E.2d 223, 227; Ill. Rev. Stat. 1987, ch. 80, par. 301 *et seq.*) A duty exists if the injury is caused by a condition of the land and the owner (1) knows, or in the exercise of reasonable care should have known, that the condition involves an unreasonable risk of harm to its invitees, (2) expects that the invitee will not discover it or protect himself against the condition, and (3) fails to exercise reasonable care to protect against the danger. *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 468, 343 N.E.2d 465, 472, citing Restatement (Second) of Torts §343 (1965).

■ An independent contractor must perform its work in accordance with the plans and specifications in a good workmanlike manner. If a contractor breaches this duty, there is a cause of action. (*Bednar v. Venture Stores, Inc.* (1982), 106 Ill. App. 3d 454, 458, 436 N.E.2d 46, 48.) A contractor may also be liable in negligence for harm if it follows plans and specifications which are so obviously dangerous that no competent contractor would follow them. *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 209, 384 N.E.2d 368, 371.

Plaintiffs first argue that a duty existed to prevent this type of harm. Plaintiffs believe the accident was reasonably foreseeable because the owners knew or should have known the premises were being used for a driver's license examining facility where inexperienced drivers, or drivers of questionable driving ability, would perform driving maneuvers and tests. There were no barriers or stops to prevent cars from leaving the parking lot surface when backing up and moving forward. Plaintiffs believe it was foreseeable for an inexperienced, elderly person to react as Kamm did and lose control of an automobile. It was also equally foreseeable, plaintiffs argue, that those inside the building were at risk of serious injury.

Plaintiffs believe the burden on defendant owners to guard against this type of harm is minimal, as the cost of providing safeguards such as curbing, proper slope, prior backup space, and a proper traffic flow are

slight when compared with the injuries that occurred. Plaintiffs also believe it would cost no more to place the waiting area away from glass windows and the parking lot where inexperienced and incompetent drivers perform their driving maneuvers without curbs.

Plaintiffs conclude here by arguing that it is desirable to place this burden on the defendant owners. Public policy dictates that those coming to a driver's license examining facility, and who are thus necessarily exposed to the dangers of incompetent drivers, be provided with a safe waiting room. Plaintiffs further note that this policy is consistent with the contractual undertaking of defendant owners and the facility operator to provide proper parking lot maintenance, including parking blocks, curbs, and to perform construction work on the lot in accordance with construction standards.

Plaintiffs support their argument with several cases. Plaintiffs believe two Illinois cases, *Ray v. Cock Robin, Inc.* (1974), 57 Ill. 2d 19, 310 N.E.2d 9, and *Marquardt v. Cernocky* (1958), 18 Ill. App. 2d 135, 151 N.E.2d 109, are similar to the instant case and are controlling. *Ray* involved an accident at an ice-cream stand at the corner of two intersecting roads. The ice-cream building was near the rear of the property while an open area containing a bicycle rack and several picnic tables was in the front. No curbing or other obstruction separated an adjoining street from the picnic area. The brakes and power steering of a vehicle traveling down the adjoining street failed, and the car went into the picnic area, hitting the bicycle rack and a picnic table. Several children were injured, one fatally. The trial court prevented a police officer from testifying at trial that he had warned an employee of the defendants' about a prior accident where an automobile had run into the picnic area. The appellate court in *Ray* held that the officer's testimony should have been allowed because it gave rise to the possibility that the accident was reasonably foreseeable.

In *Marquardt*, defendant owners operated a picnic ground and parked cars on a hill adjacent to the picnic area. There was no barricade preventing cars parked on the hill from rolling into the picnic area below. A car rolled down the hill after a child disengaged the parking gear and injured plaintiff. The court in *Marquardt* found a duty to exist and held that a jury could find that the owners of the park should have reasonably foreseen the resulting injuries as a natural and probable consequence of their failure to construct safety barriers for the picnic area.

We believe, however, that the instant case is more similar to *Simmons v. Aldi-Brenner Co.* (1987), 162 Ill. App. 3d 238, 515 N.E.2d 403. *Simmons* did not involve a vehicle rolling into a building or striking an individual in an open area, but a driver who lost control of her vehicle

and drove through the wall of a grocery store. The driver in *Simmons* turned her vehicle into the grocery's parking lot, continued through the lot, went up on the curb, and through the glass wall of the store. The vehicle completely entered the store. The driver of the vehicle had "blacked out" and lost consciousness.

The issue in *Simmons* was whether the store owners had a duty to prevent cars from entering the store. The appellate court noted that while in *Ray* and *Marquardt* the facts presented questions of whether the accidents were foreseeable, foreseeability is not the only test of the existence of legal duty. After considering all the factors in the case, the court held there was no duty to guard against this type of harm. The court emphasized that experts testified it would be mere speculation to say that certain recommended safety features would have prevented the entry of the car. The court also noted that it would take extensive studies and testing to determine what would have stopped the vehicle, and even a frame or concrete block partial wall may not have stopped the car. The court concluded that placing a duty on the store to protect against this type of accident would be an unreasonable burden, and that the type of harm which occurred was not foreseeable as a matter of law. A contrary opinion would have placed a duty on every store near a street or parking lot to construct barriers.

■ After considering all the factors present in plaintiffs' complaints, we hold that a duty did not legally exist requiring defendants to prevent the type of harm which occurred. It would be mere speculation to say the accident would have been prevented if defendants had performed the omissions or not performed the negligent acts which plaintiffs allege in their complaints. Moreover, extensive testing would be required to determine what structural barriers could have prevented such an occurrence. Placing a duty upon defendant owners or the defendant contractor in this case to guard against this type of harm would be an unreasonable burden. While it can be argued that everything is foreseeable, we hold foreseeability as a matter of law was not present in this case. See *Simmons*, at 162 Ill. App. 3d at 244, 515 N.E.2d at 407-08.

■ We also are not inclined to make an exception for such accidents occurring at a driver's examining station. While plaintiffs argue that such an occurrence is more likely to occur at a driver's examining station, it may also be argued that drivers at the facility use more care than usual while performing tests and that, as a result, such an incident is less likely to occur.

■ ■ Plaintiffs attempt to distinguish the *Simmons* decision and make several arguments. Plaintiffs first argue that defendant owners undertook a duty to prevent this type of harm in their lease with the

State. Defendant owners promised to make certain improvements on the lot, which improvements allegedly were not made. This argument is without merit because the purpose of the improvements was to facilitate parking, and not to prevent this type of harm from occurring. In the same respect, it cannot be said that defendant contractor undertook a duty to guard against this type of harm by agreeing to perform work on the lot according to any lease, plans, and/or specifications. The purpose of any work performed by defendant contractor would be to facilitate parking, and not to prevent a vehicle from entering the building.

Plaintiffs also argue that alleged defects in the lot, specifically the lack of curbing, allowed Kamm to back off the lot, causing her to become alarmed and accelerate into the building. This argument is also without merit because we do not believe the placement of curbs or other improvements would have prevented Kamm from reacting as she did. It is just as likely that Kamm would have become alarmed after backing into a curb, causing her to accelerate into the building, as it would for her to do the same after backing off the pavement.

We conclude by noting that plaintiffs have cited cases from other jurisdictions, with facts similar to the instant case, where courts have found a duty to exist. (See *McAllen Kentucky Fried Chicken No. 1, Inc. v. Leal* (Tex. Ct. App. 1981), 627 S.W.2d 480; *Zippy Properties, Inc. v. Boyd* (Tex. Ct. App. 1984), 667 S.W.2d 312; *Denisewich v. Pappas* (1964), 97 R.I. 432, 198 A.2d 144.) We note, however, that other jurisdictions have declined to find a duty in similar cases (see *Glick v. Prince Italian Foods of Saugus, Inc.* (1987), 25 Mass. App. Ct. 901, 514 N.E.2d 100; *Mack v. McGrath* (1967), 276 Minn. 419, 150 N.W.2d 681), and the only case in Illinois involving similar facts, *Simmons*, found no duty to exist.

Because we find no duty to exist, we need not address plaintiffs' other contentions. We believe that no set of facts can be proved which would entitle plaintiffs to recover here. Accordingly, the trial court is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.